## HOOPER *v*. MOUGIN ET UX.

[No. 111, September Term, 1971.]

*Decided December 9, 1971.*

The cause was argued before BARNES, MCWILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

*S. Herbert Harris,* with whom were *Edward Walsh* and *William O. Goldstein* on the brief, for appellant.

*John G. Prendergast, Jr.,* with whom were *John H. Bolgiano* and *Smith, Somerville & Case* on the brief, for appellees.

DIGGES, J., delivered the opinion of the Court.

On the morning of February 27, 1969 Dr. Joseph H. Hooper, Jr., appellant, was hunting on the River Hill Game Farm near Columbia, Maryland. Unfortunately, he was not a "lonely hunter that hunts on a lonely hill," [1] or else the tragic accident which is the subject of this dispute would never have occurred. Instead, Hooper and

1. Fiona Macleod, *The Lonely Hunter.*

his colleague, Dr. Albert Montague were accompanied by a professional guide, the appellee in this case, Edward Mougin and his pointer dog. While they were in the field pursuing their sport, Dr. Hooper fired at a quail but pellets from this shot struck appellee and caused the loss of his left eye. As a result Mougin and his wife sued Hooper in the Circuit Court for Baltimore County (Turnbull, J.) where a jury awarded them substantial damages. From the resulting judgment Hooper appeals arguing reversible error was committed when the trial judge instructed the jury as a matter of law appellee was not contributorily negligent, and when he failed to give an instruction that as a legal proposition Mougin assumed the risk of injury. Appellant alternatively claims that even if assumption of risk was a jury issue, the court's instructions concerning this defense were "erroneous, improper and prejudicial." We find no validity in any of these contentions and affirm the judgment.

The evidence here indicates that prior to the accident the threesome had been hunting that day for over two hours, during which time they bagged eight or nine pheasant but missed many more. Their search for game eventually led them to a wooded draw "that stuck out like a finger" into a large open field covered with underbrush but which was free from visual obstruction once outside the tree line of the woods. This draw was part of a woodland bordering that field. Dr. Hooper testified that while in the draw he became apprehensive of danger because of the thickness of the trees and so went into the open field. There, he took a position outside the tree line, with his back to the woods, hoping that from this vantage point he could get a good shot at any bird flying in front of him. Moments later, Dr. Montague and the guide emerged from the draw and also stood about the same distance from the tree line as Hooper but thirty yards to his left. At this time Mougin's dog was on point in front of all three men and slightly to the left of his master. Appellee was instructing Montague to flush the

quail his dog had located, but before the doctor could do so a single bird flew out. It did not fly where Dr. Hooper expected but instead headed roughly parallel to the woods, past Montague and Mougin, straight toward appellant. Hooper caught a glimpse of the quail out of the corner of his eye, quickly pivoted to his left and without hesitation shot in the direction of his companions, even though he professed a prior knowledge to their being within his general line of fire. Pellets from this shell hit both men in the face causing some minor discomfort to Montague but seriously injuring Mougin.

With these facts, we now analyze the pertinent law in terms of appellant's claims of error, all of which are related to the trial court's instructions concerning contributory negligence and assumption of risk. The distinction between these two tort concepts is slight, often difficult to pinpoint and usually of little practical significance; however, this Court has recognized that some legal difference exists. To be contributorily negligent, a plaintiff must either perform or fail to perform an act which is a proximate cause of the particular injury of which he complains. His conduct is judged by a norm of ordinary care and the failure by a plaintiff to meet this standard constitutes contributory negligence barring his recovery. *Christ v. Wempe,* 219 Md. 627, 150 A. 2d 918 (1959) ; *Potts v. Armour & Co.,* 183 Md. 483, 490, 39 A. 2d 552 (1944) ; *Warner v. Markoe,* 171 Md. 351, 189 A. 260 (1937). On the other hand, a plaintiff is said to have assumed the risk of injury when, with full knowledge and understanding of an obvious danger, he voluntarily abandons his right to complain by exposing himself to that particular risk. *Kasten Constr. Co. v. Evans,* 260 Md. 536, 544, 273 A. 2d 90 (1971) ; *Gibson v. Beaver,* 245 Md. 418, 421, 226 A. 2d 273 (1967) ; *Bull Steamship Lines v. Fisher,* 196 Md. 519, 525-26, 77 A. 2d 142 (1950).

The existence of contributory negligence, as with assumption of risk, ordinarily is a jury question and both are affirmative defenses with the burden of proof placed

on the defendant. *Abraham v. Moler,* 253 Md. 215, 218, 252 A. 2d 68 (1969) and cases cited therein. However, when undisputed facts permit only one reasonable conclusion we have often approved a determination of these issues by the court as a matter of law. *Kasten Constr. Co. v. Evans, supra* at 541; *Chalmers v. Willis,* 247 Md. 379, 385, 231 A. 2d 70 (1967) ; *Wheeler v. Katzoff,* 242 Md. 431, 435-36, 219 A. 2d 250 (1966) ; *Goldman v. Johnson Motor Lines, Inc.,* 192 Md. 24, 31, 63 A. 2d 622 (1949).

We initially consider appellant's claim that the issue of contributory negligence should have been submitted to the jury for determination. He contends under this doctrine that Mougin failed to exercise that degree of care ordinarily utilized by a hunting guide under similar circumstances. However, since he has failed to offer any evidence as to what customarily constitutes reasonable care on the part of a guide, Mougin's acts must be measured as if he were only an unskilled person without special expertise. The evidence taken in a light most favorable to Dr. Hooper does not show that appellee failed to meet this test. Not every act or omission of a plaintiff can be labeled contributory negligence so as to bar recovery. Before this doctrine can be successfully invoked it must be demonstrated that the injured party was or should have been aware of a dangerous situation and then failed to exercise ordinary care to protect himself. *Rogers v. Frush,* 257 Md. 233, 239, 262 A. 2d 549 (1970) ; *Tie Bar, Inc. v. Shartzer,* 249 Md. 711, 715-16, 241 A. 2d 582 (1968) ; *Sanders v. Williams,* 209 Md. 149, 152, 120 A. 2d 397 (1956). The record here is totally devoid of any proof that Mr. Mougin committed or omitted any act which directly contributed to produce his injury. And we discern nothing beyond a mere scintilla of evidence, amounting at most to conjecture, that could lead reasonable minds to differ about this result. *Goldman v. Johnson Motor Lines, Inc., supra; Consol. Gas Etc. Co. v. Rudiger,* 151 Md. 226, 238-40, 134 A. 326 (1926) and cases cited therein. To hold otherwise would

amount to the strained conclusion that appellee was contributorily negligent simply because he was present at the scene of the accident.

Appellant next suggests that Mougin, as a paid hunting guide, assumed the risk as a matter of law, of being accidentally shot during the hunting expedition. We disagree. As stated in *Kasten Constr. Co. v. Evans, supra* at 544, quoting from *Gibson v. Beaver*, 245 Md. 418, 421, 226 A. 2d 273 (1967):

> " 'When the plaintiff enters voluntarily into a relation or situation involving obvious danger, he may be taken to assume the risk, and to relieve the defendant of responsibility. Such implied assumption of risk requires knowledge and appreciation of the risk, and a voluntary choice to encounter it.' Prosser, *Torts*, § 55, p. 303 (2d Ed. 1955).
>
> " 'In determining whether a plaintiff had knowledge and appreciation of the risk, an objective standard must be applied and a plaintiff will not be heard to say that he did not comprehend a risk which must have been obvious to him. As Prosser in the work cited puts it at p. 310:
>
> " ' * * * In the usual case, his knowledge and appreciation of the danger will be a question for the jury; but where it is clear that any person of normal intelligence in his position must have understood the danger, the issue must be decided by the court.' "

Thus a plaintiff is said to have assumed the risk as a matter of law only when the undisputed facts permit but one reasonable determination. The evidence here clearly shows that Dr. Hooper was an experienced huntsman, frequently engaging in the sport since 1963 and having hunted at River Hill on at least one other occasion. The group had already spent two hours on the morning of the accident without any untoward incident, during

which time appellant affirmatively demonstrated that he was a seasoned hunter. This, coupled with the fact that Mougin was aware of Hooper's earlier successful visit at the game preserve, makes it seem inconceivable that reasonable minds could differ as to whether appellee had knowingly and voluntarily assumed the risk of being shot. However, it is not even necessary for us to dispose of this question for, at most, the evidence here only entitled appellant to submission of the issue to the jury for its decision—that was done. In *Ganser v. Erickson,* 279 Minn. 235, 156 N.W.2d 224 (1968) the Supreme Court of Minnesota was faced with a similar situation. In that case a minor plaintiff, while squirrel hunting, was hit in the eye by an acorn fired from the slingshot of a minor defendant. The uncontroverted evidence showed that at the time of this injury the plaintiff had knowingly taken a hunting position at a 45 degree angle from the defendant's direct line of fire. Under those circumstances, where the plaintiff assumed a more dangerous position than did Mougin, the Minnesota court held that a jury question existed as to whether the plaintiff assumed the risk of injury.

Appellant argues that even if it was for the jury to determine whether there was an assumption of risk, the judge's instructions concerning it were nonetheless inaccurate and confusing. The allegedly prejudicial instruction occurred when the trial judge stated:

"You must keep in mind, however, that whenever dangerous instrumentalities are involved a reasonably, normal, sensible, prudent person must recognize that there are certain risks involved, and he who participates in an expedition, in this case a hunting expedition, in an expedition, wherein he knows before he starts that the other parties to the expedition are going to be using dangerous instrumentalities, then he who goes along with that expedition assumes the normal risks which accompany the

use of dangerous weapons. So that if you should find, ladies and gentlemen, that this accident occurred, and that its occurrence was a normal, average risk which is taken by anyone who participates in a hunting party, then if you find it was such a normal, average risk, and that this accident came about as a normal, average risk in a hunting party, if you find that, then you should find a verdict in favor of the Defendant, because it would mean that the Plaintiff, as a part of this expedition, it would mean that the Plaintiff had assumed the risk, the average, normal risk of acts which accompany any such expedition. However, bear in mind that a person who participates in an expedition of this kind does not assume the risk of unusual dangers brought about by reason of the negligent acts or omissions of his fellow participants. What it really boils down to, ladies and gentlemen, is this: That Mr. Mougin assumed the normal risk, but if what Dr. Hooper did was abnormal and negligent, it was a risk he did not assume, and therefore if Dr. Hooper's actions were abnormal and negligent the assumption of normal risk would not bar Mr. Mougin from a recovery. Do I make myself clear on that, ladies and gentlemen?" (No response.)

A short time later in his instruction, the trial judge said:

". . . if you should find that the accident happened as one of the average, normal risks of an expedition such as this then you should find a verdict in favor of the Defendant. If, on the other hand you find that this was not an average risk of such a hunting expedition, but that it was an unusual danger and hazard brought about by negligent action on the part of Dr. Hooper, then you should find a verdict in favor of the Plaintiff."

Appellant suggests the trial court erred in stating that Mougin assumed only normal and average risks instead of instructing that the plaintiff assumed all risks. This argument is easily disposed of by quoting Chief Judge Marbury's succinct statement for the court in *Bull Steamship Lines v. Fisher,* 196 Md. 519, 526, 77 A. 2d 142 (1950) :

> "We find, however, that every risk is not necessarily assumed by one who works in a dangerous place or at a dangerous occupation. He assumes only those risks which might reasonably be expected to exist, and, if by some action of the defendant, an *unusual* danger arises, that is not so assumed." (Emphasis added.)

Judge Turnbull's instructions adequately state this principle. Appellant also would have us believe that there is no such thing as an abnormal risk and the trial court's use of that word in its instruction was confusing and incorrect. However, since *abnormal* is a synonym for *unusual,* the word used in *Bull Steamship,* that case lays this argument to rest.

Finally, Hooper claims that the trial court's failure to define what constituted an abnormal or unusual danger prejudiced his defense. Once it is determined that a jury issue was presented, it follows that it was also within the province of the trier of fact to decide what unusual dangers, if any, existed. *Cf. Chalmers v. Willis, supra* at 387. In *Ganser, supra,* the Supreme Court of Minnesota discussed this same issue when the appellant there contended that:

> "the instruction was deficient because it failed to define 'the risk' which plaintiff must be found to have knowingly chanced. We would agree that the mere act of hunting does not necessarily invoke an instruction of assumption of risk. Hunting does not inherently impute knowledge of any and all momentary or specific acts

of negligence of a hunting partner. This is not to say, however, that certain kinds of activities, such as hunting, are not risky and attended with almost self-defining risk. But although we agree with plaintiff that he did not necessarily assume the risk of being shot in the eye *merely* by going hunting with defendant, we do not agree that plaintiff was in the circumstances of this case prejudiced by a less incisive instruction. The risk of which plaintiff could be found to have knowledge, and therefore to have assumed, would seem to be specifically apparent in this case. To stand in the general line of fire of a hunting partner inescapably involves the known hazard of being struck by the projectile fired, and to do so when the partner is using a weapon and projectile of inherent inaccuracy is specifically to court disaster." Id. at 226.

In the present case the trial judge's instructions to the jury were accurate and none of appellant's arguments would justify our disturbing that verdict.

*Judgment affirmed. The appellant to pay the costs.*