BRAMBLE ET AL. *v.* THOMPSON ET UX.

[Nos. 212 and 213, September Term, 1971.]

*Decided February 16, 1972.*

The cause was argued before HAMMOND, C. J., and BARNES, McWILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

*L. Robert Evans,* with whom was *Walter Litvinuck* on the brief, for appellants.

*E. B. Harris, Jr.,* with whom were *Frank J. Tripoda* and *Hardwick & Tripoda* on the brief, for appellees.

DIGGES, J., delivered the opinion of the Court.

This appeal presents for resolution a question of first impression in this State. We must decide whether the owner of an animal known by him to be vicious can incur liability when that animal attacks and injures a trespasser on the owner's property. While the law in Maryland regarding the liability of an owner of property to trespassers as well as the liability of owners of vicious animals to persons injured is long established, it does not appear that this Court has ever decided a case in which both these tort principles were involved.

The facts here, as alleged in appellants' declarations, are not complex, but the journey of this case through the trial court has been arduous and must be set forth in some detail. Mr. and Mrs. Henry Bramble and Mr. and Mrs. Leo McNamara, appellants, were injured by a German Shepherd and as a result filed suit for damages in the Circuit Court for Queen Anne's County against appellees, Mr. and Mrs. Herman Thompson, the dog's owners. Judge Turner sustained a demurrer to the Bramble-McNamara amended declaration but allowed fifteen days for further

amendment. When they failed to amend within the allotted time the court entered a judgment of non pros. Appellants then, as a precautionary measure, appealed from that judgment and also filed another suit. Their new declaration was substantially similar to the old one except that it added the allegation that appellees were liable even though the Brambles and the McNamaras were "inadvertent trespassers." The Thompsons' demurrer to this declaration was sustained by Judge Wise without leave to amend. He based his decision on appellants' failure to allege the breach of any duty which was owed them. Their appeal from the resulting judgment in the new case was consolidated with the earlier one and both are now before us.

On appeal, the propriety of sustaining these demurrers is questioned and therefore we must examine what is alleged in the appellants' multiple-party declarations. These relate that on Saturday, June 1, 1968, the Brambles and the McNamaras were boating in the daytime on Kent Narrows, Queen Anne's County. During that outing they docked at the Thompsons' pier which was part of the property owned by the appellees and used in their seafood business. Appellants next allege that when they disembarked from their boat and while on the pier as "inadvertent trespassers" they were attacked and injured by the Thompsons' dog which was known by its owners to have vicious propensities.

In reviewing the correctness of a trial court's decision in sustaining a demurrer, we must determine if the declaration, when reasonably and fairly interpreted, discloses upon its face a cause of action that is legally and substantially sufficient. *Mahoney v. Sup. of Elections*, 205 Md. 325, 337, 106 A. 2d 927 (1954) ; *Kendall v. Rodgers*, 181 Md. 606, 610, 31 A. 2d 312 (1943). To state a cause of action in negligence a declaration must allege, with certainty and definiteness, facts and circumstances which adequately set forth a duty owed by the defendant to the plaintiff, a breach of that duty, and injury proximately

resulting from that breach. *Read Drug v. Colwill Constr.,* 250 Md. 406, 412, 243 A. 2d 548 (1968). We agree with both Judges Turner and Wise that the declarations here are defective because they failed to allege that a relationship existed between the parties which imposed a duty upon the Thompsons to prevent their dog from injuring appellants.

The liability of owners of real or personal property to an individual injured on their property is dependent on the standard of care owed to the individual and that in turn is contingent upon a determination of the individual's status while on the property, *i.e.,* whether he is an invitee, licensee, or trespasser. An invitee is one invited or permitted to enter or remain on another's property for purposes connected with or related to the owner's business. The owner must use reasonable and ordinary care to keep his premises safe for the invitee and to protect the invitee from injury caused by an unreasonable risk which the invitee, by exercising ordinary care for his own safety, will not discover. *Morrison v. Suburban Trust Co.,* 213 Md. 64, 68-69, 130 A. 2d 915 (1957) ; *Peregoy v. Western Md. R. R. Co.,* 202 Md. 203, 207, 95 A. 2d 867 (1953). A licensee is one privileged by virtue of proper consent to enter for his own purpose or convenience onto another's property. There are two types of licensees, a bare licensee and a licensee by invitation. A bare licensee takes the property as he finds it and, like a trespasser, he is owed no duty by the owner except that he may not be wilfully or wantonly injured or entrapped by the owner once his presence is known. *Crown Cork and Seal Co. v. Kane,* 213 Md. 152, 157, 131 A. 2d 470 (1957) ; *Carroll v. Spencer,* 204 Md. 387, 393, 104 A. 2d 628 (1954) ; *Peregoy v. Western Md. R. R. Co., supra.* A licensee by invitation is a social guest who takes the premises as his host uses them. In general, the legal duty owed him by the host is to take the same care of the guest as the host takes of himself or members of his family. He must exercise reasonable care to make the premises safe for his guest or he must warn him of known dangerous condi-

tions that cannot reasonably be discovered and which in fact are not discovered by the guest. *Telak v. Maszczenski,* 248 Md. 476, 237 A. 2d 434 (1968) ; *Paquin v. McGinnis,* 246 Md. 569, 229 A. 2d 86 (1967). A trespasser is one who intentionally and without consent or privilege enters another's property. 1 Poe, *Pleading and Practice,* 326-27, § 247 (6th ed. 1970) ; *Restatement (Second) of Torts,* § 158 (1965). The only duty of care a property owner owes to a trespasser, even one of tender years, is to refrain from wilfully or wantonly injuring the intruder. *Mondshour v. Moore,* 256 Md. 617, 619, 261 A. 2d 482 (1970) and cases cited therein.

Appellants here concede in their declaration that they were trespassers on appellees' premises but contend the Thompsons are nonetheless liable for the attack by their known vicious dog because the trespass was inadvertent, not wilful. To accept appellants' contention would result in a categorization of the trespass doctrine that Maryland does not recognize. This Court has long and studiously avoided distinctions or deviations in the law of trespass in an attempt to achieve consistency and certainty, so people will understand their respective rights and obligations. *Osterman v. Peters,* 260 Md. 313, 317, 272 A. 2d 21 (1971) ; *Hensley v. Henkles & McCoy, Inc.,* 258 Md. 397, 412, 265 A. 2d 897 (1970) ; *Herring v. Christensen,* 252 Md. 240, 241, 249 A. 2d 718 (1969) ; *cf. Demuth v. Old Town Bank,* 85 Md. 315, 320, 37 A. 266 (1897). It would be ludicrous to hold that someone is liable because his watchdog failed to discriminate between an inadvertent trespasser on the property and one who is there bent on criminal activity. Likewise, if we accept appellants' argument, there would be an unwarranted expansion in this State of an owner's liability for injuries caused by his animal.

In Maryland, the owner or keeper of an animal, if he has actual or constructive knowledge of its ferocious or dangerous propensities, may be responsible, depending upon the circumstances, for all proximately caused injury or damage. *Twigg v. Ryland,* 62 Md. 380 (1884).

This Court has held that the owner of a known vicious animal is liable when that animal has either been at large away from its owner's property or has injured a person invited to the owner's business premises. Thus, in *May Co. v. Drury,* 160 Md. 143, 153 A. 61 (1921) recovery was allowed when an invitee, while in a pet store, was bitten by a parrot that was permitted by its owner to roam freely, despite the fact that the proprietor knew of the bird's vicious nature. Similarly, in *Herbert v. Ziegler,* 216 Md. 212, 139 A. 2d 699 (1958) the owner of a riding academy was held liable for injuries to an invitee thrown and dragged by a horse known to its owner to become frightened and bolt at slight provocation. In *Hamilton v. Smith,* 242 Md. 599, 219 A. 2d 783 (1966), this Court affirmed a judgment rendered in favor of a young boy who was mauled by three dogs known by their owner to be vicious. The boy and his family lived in a rented house on land owned by the defendant. He had gone to a store owned and operated by this defendant which was situated on the same tract of land. After making a purchase and while returning home by the only available route, he was attacked. For a comparable holding see *Bachman v. Clark,* 128 Md. 245, 97 A. 440 (1916) where a boy, while playing on the street, was bitten by a dog and subsequently recovered against the animal's owner.

Since all of these cases involved persons who were not trespassers at the time of their injuries, appellants should not take solace from this discussion. Once they state in their declaration that they were trespassers, albeit inadvertent, there is simply no authority in Maryland which permits their recovery unless wilful or wanton misconduct or entrapment on the part of the animal's owners can be shown. No such allegation was made here.

The Brambles and the McNamaras attempt to escape from their unenviable predicament by urging that we adopt the reasoning of those jurisdictions which conclude that owners of vicious animals may be liable for injuries to inadvertent trespassers. There are many nuances involved in the manner in which various jurisdictions have

considered responsibility for attacks by one's vicious dog. In some states, statutes specifically deal with the problem of liability for attacks by domestic animals and determine whether there is responsibility for injuries to a trespasser. *See, e.g.,* Mass. Gen. Laws Ann., Ch. 140, § 155. There is no such statutory direction in Maryland. Courts of other states permit recovery on the grounds that keeping a known vicious dog constitutes a nuisance which renders the owner strictly liable to any person who, without essential fault, is injured by the animal. *See, e.g., Brewer v. Furtwangler,* 171 Wash. 617-18, 18 P. 2d 837 (1933). This Court has not applied a nuisance theory of recovery in cases of this kind and will not do so here.

Appellants further urge that we adopt the distinction made by the authorities which say that a person's right to keep a vicious dog to defend his property is dependent on whether it is day or night. These hold that if the animal injures a trespasser during the daytime the owner is liable, while if the dog harms an interloper entering the premises at night the owner is not responsible. See cases referred to in 3 C.J.S. *Animals* § 153 (1936) ; and 4 Am.Jur.2d *Animals* § 105 (1962). The basis for this differentiation was apparently grounded on a belief that a person was able to protect his property himself during the day, while at night he needed the assistance of a trusty watchdog. We think this is illogical for we perceive of no useful purpose that can be served by a rule that prohibits a person from taking adequate but reasonable measures to protect his property from intrusion at all times. This is especially true since a person may be absent from his property either during the day or night. In today's world entire families are frequently away from home during the daytime and most businesses are closed at least one day a week and sometimes more. If an individual is to be held liable for injuries caused while protecting his property against trespassers, it seems irrational to premise that responsibility on the hour when the injury occurs. There is no allegation that the Thomp-

sons did any more than simply take reasonable precautions against the undesired infringement of trespassers. We are unwilling to recognize the daytime exception in trespass cases because it is our feeling that such a rule would frustrate and preclude individuals, like the appellees, from taking proper measures to protect their property.

Our conclusions in this case find support in the *Restatement of Torts* (1934). Section 509 states:

> *"Harm Done by Abnormally Dangerous Domestic Animals*
>
> Except as stated in § 517, a possessor of a domestic animal which he has reason to know has dangerous propensities abnormal to its class, is subject to liability for harm caused thereby to others, *except trespassers on his land,* although he has exercised the utmost care to prevent it from doing the harm." (Emphasis added.)

Section 517 exempts those who have possession of dangerous domestic animals in pursuance of a public duty or as a common carrier. Additionally, § 511 reads:

> *"Liability to Trespassers*
>
> Except as stated in §§ 512 and 516, a possessor of land is not liable to a trespasser thereon for harm done to him by a wild animal or an abnormally dangerous domestic animal kept by the possessor thereon although
>
> (a)  the possessor has not exercised care to keep the animal under control, and
> (b)  the trespasser has no reason to know that such animal is kept upon the land."

A possessor of land, under § 512, who has reason to know trespassers constantly intrude upon a limited area of his property may be liable for harm done to such a trespasser. This problem is not involved here. Section 516 recognizes that a possessor of land has a privilege to employ a watchdog for protection of his possessions

to the same extent he is entitled to use a mechanical protective device.

Appellants' final contention, citing § 516, is that since the Thompsons' dog was likely to cause death or serious bodily harm the animal is analogous to a spring gun or other mechanical device. It is then argued that appellees are not entitled to inflict greater harm through the use of the dog than they would be permitted to inflict directly. *Restatement (Second) of Torts* § 85 (1965). We need not decide to what extent any particular device may be deployed in specific circumstances before it becomes wanton or wilful misconduct or entrapment. We merely conclude that the use of a vicious watchdog to protect its owners' property does not constitute such action. Appellants' analogy is manifestly inappropriate as we agree with the statement of the New York court in *Woodbridge v. Marks*, 45 N.Y.S. 156, 160, 17 App. Div. 139 (1897) where it was said:

> "A spring gun is more than likely to take human life. It is placed, not for the purpose of warning others off, but with the design to do them great injury, even if life is not taken should they come in contact with it. A dog is rarely so vicious or powerful that it would endanger a man's life. And the watch dog is used, not so much for the purpose of injuring an intruder, but rather as a means for warning and frightening him away. A dog gives notice of his presence and attack. A spring gun kills without any notice whatever." *Id.* at 160.

We conclude that appellants have not stated a cause of action and the demurrers to their declarations were properly sustained.

> *Judgment in both cases affirmed.*
>
> *Costs to be paid by appellants.*