492 A.2d 910

AUTO VILLAGE, INC.

v.

Richard A. SIPE, et al.

No. 1250, Sept. Term, 1984.

Court of Special Appeals of Maryland.

May 20, 1985.

Richard H. Lerch, Baltimore (Lerch and Huesman, Baltimore, on the brief), for appellant.

Gary C. Duvall, Towson (Kenneth F. Spence, III and Miles & Stockbridge, Towson, on the brief), for appellees Richard and Paul Sipe.

Donald K. Krohn, Baltimore (Donald L. Merriman and Merriman & Mann, P.A., Baltimore, on the brief), for appellees Harry and Juliette Gross.

Argued before GARRITY, ALPERT and ROSALYN B. BELL, JJ.

ALPERT, Judge.

A Baltimore County jury decided that certain defective automobile repairs caused two vehicles to collide, resulting in serious personal injuries. This appeal followed and five issues are raised, the most controversial of which concerns "Mary Carter" settlement agreements. Appellant, who was found liable to two sets of plaintiffs in a consolidated trial, contends that the trial court

   I.  erred in excluding evidence of a settlement agreement between plaintiffs-appellees Sipes and the Grosses, who at the time of settlement were defendants in the Sipes action;

  II.  should have struck the testimony of the plaintiff's expert because his opinion was not based upon facts submitted in evidence;

 III.  should have granted appellant's motion for a directed verdict;

 IV.  erred in failing to limit its instruction to the jury to a defective distributor cap; and

  V.  erred in refusing to rule as a matter of law that plaintiffs-appellees Gross were guilty of contributory negligence and/or assumption of risks.

After a review of the record and applicable case law, we hold that the trial judge did not err.

## FACTS

In November, 1979, appellee, Juliette Gross, purchased an American Motors Corp. ("AMC") Eagle from appellant,

Auto Village, Inc.[1]  In the winter of 1979–80 Mrs. Gross had experienced some trouble with the vehicle in that it would stall on cold mornings.  In June, 1980, Mrs. Gross experienced more difficulty with the vehicle in that it would lose power, the engine would shut off and it became difficult to steer and/or apply the vehicle's brakes.  During the last week in June and the first week of July, 1980, the vehicle lost power and stopped approximately five times.[2]

On July 7, 1980, when Mrs. Gross took the vehicle to appellant for repair, appellant's mechanic allegedly repaired the vehicle and returned it to her stating that it was fixed. The mechanic stated that the problem was a loose wire and a loose screw;  at the same time he pointed to the area of the vehicle's distributor.

Mrs. Gross experienced additional problems with the vehicle five days later.  On July 12th, while she and her husband, also an appellee, drove to York, Pennsylvania, the vehicle lost power and stalled once.  On the return trip it stalled "six or seven times" while Mrs. Gross was driving and "once or twice" after Mr. Gross took over the driving. The last time the vehicle stalled it crossed the center lane of York Road and struck the vehicle owned and being operated by appellee, Richard Sipe, whose wife, Paula, also an appellee, was a passenger at the time.

As a result of the collision both the Sipes and Grosses suffered severe injuries.  Two suits were then filed in the Circuit Court for Baltimore County.  Richard and Paula Sipe sued Harry and Juliette Gross, Auto Village, Inc. (the dealer) and AMC (the manufacturer);  Harry and Juliette Gross sued Auto Village and AMC.  The cases were consolidated for trial and tried by a Baltimore County jury (Kinkel, J., presiding).

---

1.  American Motors Corp. was a defendant in the consolidated actions below.  At trial, the jury returned a verdict in its favor on both actions.  Consequently, it is not a party to this appeal.

2.  Twice on June 29th, once on July 4th, July 5th and July 7th.

Prior to trial the Sipes settled with the Grosses and dismissed them as defendants in their action. The agreement, which was disclosed to Auto Village and AMC just prior to trial, provided that the Grosses would pay the Sipes $50,000.00 plus 20% of whatever they recovered in their suit against Auto Village and AMC. In return, the Sipes dismissed the Grosses as defendants in their action. After the dismissal of the Grosses, the parties were aligned in the following manner:

Richard and Paula Sipe v. Auto Village, Inc. and AMC.

Harry and Juliette Gross v. Auto Village, Inc. and AMC.

The jury returned verdicts in both cases in favor of the defendant AMC and in favor of the plaintiffs against appellant.

## I.

Initially, appellant alleges error in the trial court's exclusion of any evidence on the existence of the pre-trial settlement agreement between the Sipes and the Grosses. According to appellant, the Sipe-Gross agreement is a "Mary Carter"[3] agreement and, consequently, the jury should have been apprised of its existence.

A "Mary Carter" agreement is a partial settlement between the plaintiff in a case and some but not all defendnats. *See* Note, 47 S.Cal.L.Rev. 1393, 1397 (1974). While the variety of Mary Carter agreements is unlimited, there are three basic features:

1.  the agreeing defendant remains a defendant in the suit and defends self at trial;
2.  the agreement is secret; and
3.  the agreeing defendant guarantees that he will pay the plaintiff a certain sum of money and partakes an interest in plaintiff's recovery against the non-settling defendants.

---

3. The term arose out of a pretrial agreement in *Booth v. Mary Carter Paint Co.,* 202 So.2d 8 (Fla.Dist.Ct.App.1967).

*See General Motors v. Lahocki,* 286 Md. 714, 410 A.2d 1039 (1980). *See also* Freedman, "The Expected Demise of 'Mary Carter': She Never Was Well," 1975 Ins.L.J. 602, 610; Note, 47 S.Cal.L.Rev. 1393 (1974); Annot., 65 A.L.R.3d 602 (1975) and cases cited therein.

At first blush, it is apparent to us that the agreement in the case *sub judice* satisfies only the second criterion. Neither appellant nor AMC was aware of the agreement prior to the Sipes' dismissal of the Grosses. Hence, the issue is whether the first and third criterion are satisfied.

■ While appellant acknowledges that the Grosses were dismissed as defendants, it argues that the first criterion is satisfied by virtue of the fact that the Sipes' and Gross' suits were consolidated for trial. It appears to us, however, that in order to satisfy this prong, the settling defendant must remain as a party defendant. *See* Freedman, *supra* at 609–10. *See also City of Tucson v. Gallagher,* 108 Ariz. 140, 493 P.2d 1197 (1972); *Cox v. Kelsey-Hayes Co.,* 594 P.2d 354 (Okla.1979); *Bristol-Myers Co. v. Gonzales,* 561 S.W.2d 801 (Texas 1978). *Compare Reese v. Chicago, Burlington and Quincy Railroad Co.,* 55 Ill.2d 356, 303 N.E.2d 382 (1973) (witness of settling defendant who was dismissed should be permitted to be cross-examined on existence of loan agreement wherein settling defendant loaned plaintiff $57,500.00 and plaintiff, in turn, agreed to repay loan if she received judgments against non-settling defendant) and *General Motors Corp. v. Simmons,* 558 S.W.2d 855 (Texas 1977) (witness, not a party, in turn, agreed not to sue witness and agreed to give witness 50% of everything recovered from the defendant over $200,000.00). It is in his capacity as a defendant that the settling defendant aids the plaintiff's case. As the Court of Appeals observed in *Lahocki,* it is in this capacity that the settling defendant can "cross-examine nonadverse witnesses" and reiterate testimony harmful to the non-settling co-defendant. 286 Md. at 724, 410 A.2d 1039.

■ In the case *sub judice* while the Grosses remained participants in the consolidated trial, we do not believe the dangers addressed by *Lahocki* are present. The Grosses could not lead the Sipes' witnesses through "cross-examination." We also believe that, by virtue of the alignment of parties with both the Sipes and Grosses as plaintiffs, the jury was aware that both had a financial interest in the cases and there was no danger of creating a non-adversarial situation between the plaintiffs and defendants.

■ Also conspiciously absent in the Sipe-Gross agreement is the guarantee clause. The guarantee clause in a "Mary Carter" agreement not only guarantees to the plaintiff a minimum recovery but also usually provides that the agreeing defendant's liability will, in some way, be proportionately reduced by any judgment against the non-agreeing defendant. *See Wyller v. Fairchild Hiller Co.,* 503 F.2d 506 (9th Cir.1974) (agreeing defendant will be reimbursed for loan to plaintiff if plaintiff recovers from non-agreeing defendant); *City of Tucson v. Gallagher,* 108 Ariz. 140, 493 P.2d 1197 (1972) (agreeing defendant need not pay plaintiff if recovery from non-agreeing defendant exceeds $10,000.00); *Reese v. Chicago, Burlington and Quincey Railroad Co.,* 55 Ill.2d 356, 303 N.E.2d 382 (1973) (same as *Wyller*); *General Motors Corp. v. Lahocki,* 286 Md. 714, 410 A.2d 1039 (1980) (agreeing defendant need not pay plaintiff guaranteed sum if recovery against all defendants or non-settling defendant); *Cox v. Kelsey-Hayes Co.,* 594 P.2d 354 (Okla.1979) (agreeing defendant need not pay if judgment rendered against defendants; if recovery from non-agreeing defendant exceeds $250,000.00 agreeing defendant to be reimbursed 50% of monies paid to plaintiff); *Bristol-Myers Co. v. Gonzales,* 561 S.W.2d 801 (Texas 1978) (same as *Wyller*); *General Motors Corp. v. Simmons,* 558 S.W.2d 855 (Texas 1977) (agreeing defendant to get 50% of everything received from non-agreeing defendant in excess of $200,000.00).

■ 288

■ In the case *sub judice* the Sipe-Gross agreement does not provide the Grosses with any "refund" or cancel their obligation to pay if the Sipes recovered from either appellant or AMC. Under the terms of the agreement the Grosses agreed to and did pay the Sipes $50,000.00 and in return the Sipes agreed to and did dismiss their action against the Grosses. That the Grosses also agreed to pay the Sipes an additional 20% of their recovery, as plaintiffs, against appellant and AMC does not operate to give the Grosses any financial stake in the Sipes' recovery. The jury was already aware that the Grosses, by virtue of their own claim against appellant and AMC, had a financial interest in holding appellant liable. *See Wyller v. Fairchild Hiller Corp.*, 503 F.2d 506 (9th Cir.1974).

Contrary to what appellant suggests, the agreement here rings less of "Mary Carter" and more of that type addressed by the Court of Appeals in *Brooks v. Daley*, 242 Md. 185, 218 A.2d 184 (1965). In *Brooks* the plaintiff sued the defendants separately; the actions, however, were consolidated for trial. Prior to trial, the plaintiff settled one of the claims and dismissed the suit against that defendant. The non-settling defendant wanted the jury apprised of the settlement and the court refused. On appeal, the court, affirming, noted that the agreement was a "joint tort-feasor release" and the jury need not know of the settlement because it would confuse them, mislead them in their deliberations, and could be misconstrued as an admission of liability by the agreeing defendant. *Id.* at 193, 218 A.2d 184. Accordingly, we find no error in the trial court's decision, in the case *sub judice*, to exclude evidence of the Sipe-Gross agreement.

## II.

Appellant also contends that the testimony of appellees' expert, Robert Cinibulk, must be struck "[i]f the factual basis for his opinion is not already in evidence or does not later come into evidence." Specifically, appellant argues that Mr. Cinibulk based his opinion on his belief that the

Gross vehicle had been stalling for a period of two to seven months.

■ While appellant correctly states the applicable law, *see Use of Stickley v. Critzer*, 230 Md. 286, 186 A.2d 586 (1962), it incorrectly characterizes Mr. Cinibulk's testimony. After a thorough review of his testimony, we are unable to find where he, as appellant suggests, bases his opinion as to the problem with the Gross vehicle on his understanding that the vehicle had been stalling for several months. In fact, it is apparent to us that even when appellant's trial counsel attempted to elicit from Mr. Cinibulk that this information formed a basis for his opinion, Mr. Cinibulk denied it. At trial the following colloquy occurred:

Q And that period of time, that two months or seven months or whatever, is part of the basis of your overall opinion in this case.

A My opinion to the instant fact that instantaneously occurred when that distributor lost its connection, lost its power supply, which was in my opinion an instantaneous thing. Once the power was completely shut off, it could not recover; that's when the engine shut down as far as this occurrence is concerned.

Now, any other time I don't know because I never inspected that distributor or was involved with the car. I don't know what could have been happening on the other times that they reported there was a problem.

### III.

Appellant next contends that it should have been granted a directed verdict because, presuming Mr. Cinibulk's testimony is stricken, "there would have been nothing but pure speculation as to the existence of any negligence on the part of [appellant]." Alternatively, appellant argues that, even given Mr. Cinibulk's testimony, appellees failed to prove that the engine failure could not have been caused by dirty gasoline and/or a defect in the exhaust-gas-recirculating system ("EGR").

Appellant relies on *Langville v. Glen Burnie Lines*, 233 Md. 181, 195 A.2d 717 (1963) for support. In *Langville*, the plaintiff, a minor who brought suit through her father, was injured while riding as a passenger in a bus. While at trial, her counsel attempted to show the negligence of the defendant bus driver; the proof, however, tended to show that the accident was caused by a failure in the bus' brakes. In affirming the trial court's grant of a directed verdict, the Court of Appeals observed:

> At this point, we are confronted by the well-established rule of evidence that the burden mentioned above is not met by proof adduced by the plaintiff to the effect that defendant's negligence may have caused the injuries, or even that it probably did cause them, if it also appears from plaintiff's evidence that the injuries may have resulted from some other cause for which the defendant is not responsible. The rule was stated by Chief Judge McSherry for the Court in *Strasburger v. Vogel*, 103 Md. 85, 91, 63 A. 202, thus: 'But when the plaintiff himself shows that the injury complained of must have resulted *either* from the negligence of the defendant *or* from an independent cause for the existence of which the defendant is in no way responsible, he cannot be permitted to recover until he excludes the independent cause as the efficient and proximate cause of the injury * * *.'

*Id.* at 185, 195 A.2d 717 (emphasis in original).

Appellant concedes that the court instructed the jury as it should under *Langville* but argues, *inter alia,* that the instruction was meaningless because appellees never excluded the possibility that either dirty gasoline or a defect in the EGR system caused the engine failure. We disagree.

■ Upon a review of the record, we believe that there was sufficient evidence from which the jury could infer that neither dirty gasoline nor a defect in the EGR system caused the engine failure. During the course of examination, Mr. Cinibulk testified:

Q  I don't believe you quite responded to the question Mr. Cinibulk, because I asked you if you had an opinion as to whether or not the fuel system was responsible for Mrs. Gross's symptoms as she described them?
A  In my opinion they were not.

.        .        .        .        .

Q  I'm not talking about what would necessarily happen, Mr. Cinibalk (sic) I'm asking is it not true that a problem with that [EGR] system could cause an engine shut down like Mrs. Gross described.  Isn't that a fact?
MR. DUVALL: Objection.
THE COURT: Overruled.  You can answer.
THE WITNESS: In my opinion it would not.  It would have to be very drastic.  You would have to be able to take hold of the carburetor and go like this and be able to move it just like you could that cap to supply so much air to it when the engine runs, and the carburetor is changing around, to change the mixture, so the EGR would change and that's it.  You would have to have a vibration in that car.  She didn't have that situation because the carburetor was tight.

### IV.

Appellant's fourth argument is not a model of clarity. Apparently, it contends that during the course of instructing the jury, the trial judge erroneously refused to specify that the defect at issue was a loose distributor cap on the Gross vehicle.  This, at least, was the exception taken at trial.

■  We believe that the trial judge correctly refused the requested instruction.  The issue at trial was essentially the cause of the engine failure in the Gross vehicle.  During the course of the trial, several possible causes for the failure were developed including a loose distributor cap, an over-tensed rotor arm, dirty gasoline, a defect in the EGR system and lack of dielectrical compound (a greasy substance used in the cap because of the presence of dissimilar

metals). The record indicates that the trial judge rejected the requested instruction for this very reason, *i.e.*, a cause could have been the lack of dielectrical compound.

Appellant's requested instruction attempted to segregate certain facts, *i.e.*, that the only defect to be considered was the loose cap. In *Friedman v. Hendler Creamery Co.*, 158 Md. 131, 148 A. 426 (1929), the Court of Appeals disapproved of this type of instruction, noting that:

> [I]t must also be remembered that any prayer denying the plaintiff's right to recover upon the finding of a segregated group of facts is bad, if there are in the case other facts not included in that group which may properly and validly be given the effect of qualifying or destroying the conclusion stated in the prayer. *Kelly v. Huber Baking Co.*, [145 Md. 321, 125 A. 782], *supra*. For, as was said in *Hart v. Leitch*, 124 Md. [77] 82 [91 A. 782]: 'Where a prayer instructs the jury that the plaintiff is entitled to recover if certain facts are found to exist, its effect is to withdraw from the consideration of the jury all facts other than those specified, and the rule is that the prayer is erroneous if the facts which it excludes admit of a conclusion different from the one to which it is directed.'

*Id.* at 140, 148 A. 426. *See also State v. Pennsylvania Railroad Co.*, 190 Md. 586, 595–96, 59 A.2d 190 (1948). Accordingly, it was not error to refuse to limit the instruction as requested.

## V.

Finally, appellant contends that the court erred in not ruling, as a matter of law, that the Grosses were either contributorily negligent or had assumed the risk of injury in operating their vehicle. In its brief, however, appellant incorrectly equates contributory negligence and assumption of the risk. *See Hooper v. Mougin*, 263 Md. 630, 284 A.2d 236 (1971). Its argument is essentially that the Grosses were, as a matter of law, guilty of assumption of risk. We disagree.

We recently set forth the elements of an assumption of the risk defense in *Kirby v. Hylton*, 51 Md.App. 365, 443 A.2d 640 (1982). In *Kirby* we stated that "a plaintiff is said to have assumed the risk of injury when, with full knowledge and understanding of an obvious danger, he voluntarily abandons his right to complain by exposing himself to that particular risk." *Id.* at 378, 443 A.2d 640.

▇▇▇ The question of a party's assumption of a risk should always be left to the trier of fact in all but the clearest of cases. *Hooper*, 263 Md. at 630, 284 A.2d 236. The record in the case *sub judice* indicates that this is not one of those cases. There was evidence presented at trial from which a trier of fact could infer that the Grosses had no choice but to attempt to drive their vehicle home from York despite its repeated engine failures. Mr. Gross testified that there were no places along York Road which were open and where they could get help, that they did not come across a telephone and that they did not have a radio to summon help. This evidence would permit an inference that the Grosses' election to drive home was not voluntary; the court, therefore, did not err in submitting this issue to the jury.

JUDGMENTS AFFIRMED; COSTS TO BE PAID BY APPELLANT.