## BEVERLY M. JONES *v.* ZACHARY A. HURST

[No. 1255, September Term, 1982.]

*Decided May 6, 1983.*

The cause was argued before WILNER, GARRITY and ADKINS, JJ.

Submitted by *Elijah E. Cummings* for appellant.

*Jeffrey B. Smith,* with whom were *Douglas B. Schoettinger* and *Smith, Somerville & Case* on the brief, for appellee.

ADKINS, J., delivered the opinion of the Court.

Under the Uniform Contribution Among Tort-Feasors Act, (Code Art. 50, §§ 16-24), certain consequences ensue when an injured person releases one of several joint tort-feasors. One of those consequences may be a reduction in any judgment the injured person recovers against the remaining tort-feasor(s). Under § 19:

> A release by the injured person of one joint tort-feasor, whether before or after judgment, does not discharge the other tort-feasors unless the release so provides; but reduces the claim against the other tort-feasors in the amount of the consideration paid for the release, or in any amount or proportion by which the release provides that the total claim shall be reduced, if greater than the consideration paid.

Section 20 deals directly with contributions between joint tort-feasors. It provides:

> A release by the injured person of one joint tort-feasor does not relieve him from liability to make contribution to another joint tort-feasor unless the release is given before the right of the other tort-feasor to secure a money judgment for contribution has accrued, and provides for a reduction, to the extent of the pro rata share [1] of the released tort-feasor, of the injured person's damages recoverable against all other tort-feasors.[2]

But these provisions do not come into play unless the person released was a joint tort-feasor, one of "two or more persons jointly or severally liable in tort for the same injury to person or property. . . ." Section 16 (a). *Swigert v. Welk,* 213 Md. 613, 133 A.2d 428 (1957). The question now before us is whether a statement in a joint tort-feasor release that the released person "shall be considered as joint tort-feasors

---

1. In Lahocki v. Contee Sand and Gravel, 41 Md. App. 579, 621, 398 A.2d 490, 514 (1979), rev'd, on other grounds, 286 Md. 714, 410 A.2d 1039 (1980), we held "that the term 'pro rata share' [means] . . . in numerical shares or proportions based on the number of tort-feasors."

2. As to the relationship between §§ 19 and 20, see Martinez v. Lopez, 54 Md. App. 414, No. 1084, Sept. Term, 1982 (filed April 14, 1983).

[*sic*]" is sufficient to implement the provisions of § 19, in the absence of a judicial determination of liability of that person, and despite an express denial of liability. The question is presented in the following factual context:

On November 20, 1976, an automobile owned and operated by the appellant, Beverly M. Jones, was struck in the rear by an automobile operated by the appellee, Zachary A. Hurst and owned by Henry M. Hurst. Jones sued the Hursts for personal injuries received in the action. Zachary Hurst contended that the cause of the accident was brake failure. Jones filed a separate suit against General Motors Corporation and Park Circle Motor Company on this ground.[3] The two cases were consolidated for trial.

Thereafter, on June 8, 1981, Jones settled her case against General Motors.[4] The principal consideration for the release was an agreement by General Motors to provide a brake expert to defeat the brake failure defense. The release, captioned "*JOINT TORT-FEASOR RELEASE*", referred to the accident of November 20, 1976, and to Jones's action against General Motors. It said Jones "claimed the said General Motors Corporation to be legally liable" for the accident "for which liability is hereby expressly denied." The release continued:

> I [Jones] further understand and agree that in any action or suit in which General Motors Corporation may be of [*sic*] has been joined as a defendant, any and all judgments recovered [*sic*] by me against any person, firm or corporation for any and all claims as aforesaid shall be reduced in the amount of the consideration paid for this release or to the extent of the pro rata share of the said General Motors Corporation if said pro rata share is greater than the consideration paid for this release [recited to be $10]; or in accordance with the Uniform Contribution Among Tort-Feasors Act,

---

3. Park Circle was never served, so the second action proceeded against General Motors alone.

4. A docket entry in that case's file, dated June 15, 1981, indicates judgment absolute dismissing with prejudice the case against General Motors.

Article 50, Sections 16-24 of the Maryland Code. I further agree that for the purpose of determining the amount of any judgments that may be recovered by me against any person, firm or corporation, except General Motors Corporation in the aforesaid action . . . *that the said General Motors Corporation shall be considered as joint tortfeasors* [sic] *to the same extent and effect as if judgments had been rendered against them* [sic] *as joint tort-feasors* [emphasis supplied].

The case against the appellee and Henry Hurst came on for trial on July 13, 1981, in the Court of Common Pleas of Baltimore City before Judge David Ross and a jury. The General Motors release was offered. Following the close of evidence, a verdict was directed in favor of Henry Hurst. The jury brought in a verdict of $18,000 against Zachary Hurst and in favor of Jones. Judgment absolute was entered in that amount. Invoking the release, and § 19 of Article 50, Zachary moved for a reduction of the judgment by one-half. Judge Ross granted the motion and reduced the judgment against Zachary to $9,000. This appeal followed.

Jones relies chiefly on *Swigert v. Welk, supra*.[5] In that case, Newport was the injured party. She was a passenger in Swigert's car when that vehicle was struck by one operated by Welk. Newport sued Swigert who impleaded Welk. Welk produced a release from Newport, claimed this barred any suit against him, and obtained summary judgment in his favor. Swigert's contention was that because there was a latent right of contribution between him and Welk, Welk should remain in the case for determination of his liability as a joint tort-feasor. The Court of Appeals agreed with Swigert and reversed.

The court reasoned that if Welk were a tort-feasor, the release would have brought him within what is now § 20 (then § 24) of Art. 50. Whether Welk's joint tort-feasor status existed depended upon whether he was a person

5. *Swigert* dealt with what is now § 20 of Art. 50, but we think its analysis of the need for establishment of the joint tort-feasor status of the released person applies to § 19 as well.

"jointly or severally liable" to Newport. Section 16 (a) (then § 20 (a)). Welk's release expressly denied liability. Thus, Welk's status as a joint tort-feasor had not been established. The court concluded that it "would create a somewhat incongruous procedural situation to have a party to a case completely dismissed and leave the question of his liability to be determined." *Id.* at 622, 133 A.2d at 433.

According to Jones, because General Motors's liability has never been judicially determined, it is not a joint tort-feasor and thus the Uniform Contribution Among Joint Tort-Feasors Act, including the § 19 provision for reduction of a judgment, does not apply. But this case is distinguishable from *Swigert.* The release in that case contained an express denial of liability and did not provide for establishing the released defendant's joint tort-feasor status. A denial appears in the release in this case too; however, it is coupled with the statement: "for the purpose of determining the amount of any judgments that may be recovered by me against any person, firm or corporation, except General Motors . . . the said General Motors Corporation shall be considered as joint tort-feasors [*sic*] to the same extent and effect as if judgments had been rendered against them [*sic*] as joint tort-feasors." The issue before us is whether that language is sufficient to satisfy the statutory requirement of establishing General Motors's joint tort-feasor status.

In *Swigert,* the Court of Appeals said:

> The act does not specify the test of liability. Clearly, something short of an actual judgment will suffice; we think it equally clear that a denial of liability will not. *Id.* at 619, 133 A.2d at 431.

We think that this release is sufficient for that purpose.

In *Griffin v. United States,* 500 F.2d 1059 (3d Cir. 1974) the court had before it the application of the Pennsylvania Uniform Contribution Among Tort-Feasors Act. That act is similar to Maryland's; indeed, in deciding *Swigert,* the Court of Appeals relied principally upon a Pennsylvania case, *Davis v. Miller,* 385 Pa. 348, 123 A.2d 422 (1956). The federal court also relied on *Davis,* reading it as normally

requiring a judicial determination of joint tort-feasor liability — a view to which the Maryland Court of Appeals did not adhere, as appears from the preceding quotation. But even given the Pennsylvania position, the *Griffin* court concluded that judicial determination of that liability could be waived. It held that a release given to a purported joint tort-feasor, which release did not admit the released person's liability, nevertheless established the released person's joint tort-feasor status, thus waiving the Pennsylvania requirement of judicial determination of liability. The release in *Griffin* provided for a reduction in judgment against other alleged tort-feasors, "whether or not the released party was in fact a joint tort-feasor" 500 F.2d at 1072. This is a far less plain admission of joint tort-feasor status than that contained in the release now before us.

Later, in *Mazer v. Security Ins. Group,* 507 F.2d 1338 (3d Cir. 1975) the court interpreted *Griffin* as holding "that the joint tort-feasor status of a settling party could . . . be established not only by judgment but also by a provision in the joint tort-feasor release in which the injured party acknowledges that in any lawsuit the verdict will be reduced to the extent agreed upon." *Id.* at 1342. This language precisely fits the present case, and we find it persuasive.

Judge Ross applied a contractual analysis to the release, an approach also used in *Lahocki v. Contee Sand and Gravel, supra,* 41 Md. App. at 620-21, 398 A.2d at 514, analogous to the waiver approach in *Griffin, supra,* 500 F.2d at 1072. The salient issue becomes the intent of the parties to the release. Aside from the nominal consideration of $10 received by Jones, as a result of this release agreement, she also acquired a valuable witness with which to rebut Hurst's defense of brake failure.[6] In exchange, General Motors was able to escape judicially-determined liability to Jones,[7] and was also able to avoid liability for contribution to Hurst, by satisfying the requirements of Art. 50, § 20. General Motors's denial of liability and concession of joint tort-feasor status

---

6. Counsel for the appellee speculated that that testimony contributed considerably to a verdict in favor of the appellant.

7. The advantage of this stipulation to General Motors from a public relations point of view is patent.

was not self-contradictory, the release was not ambiguous, and Judge Ross interpreted it correctly, as a matter of law. Jones is bound by her agreement. By way of *dicta* in *Martinez v. Lopez, supra,* 54 Md. App. at 426, we suggested that a release agreement of the kind involved here would bring a case within the provision of the Uniform Contribution Among Tort-Feasors Act. We now so hold.

> *Judgment affirmed.*
> *Appellant to pay the costs.*