513 A.2d 915

Barbara **ALLGOOD** et al.

v.

Kenneth **MUELLER** et al.

No. 146, Sept. Term, 1985.

Court of Appeals of Maryland.

Aug. 27, 1986.

David M. Williams, Chestertown, for appellants.

Patrick James Attridge (Bernard J. Harig, on brief), Rockville, for appellees.

Edward S. Digges, Jr., Jack L. Harvey and Digges, Wharton & Levin, on brief, Annapolis, and Thomas H. Fitzpatrick and Anthony Hume, of counsel, Dallas, Tex., on brief, for Dresser Industries, Inc.

Argued before MURPHY, C.J., and SMITH,* ELDRIDGE, COLE, RODOWSKY, COUCH and McAULIFFE, JJ.

RODOWSKY, Judge.

This case illustrates a form of release under the Maryland Uniform Contribution Among Joint Tort-Feasors Act

---

* Smith, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

(the Act) which, in combination with the way in which the facts ultimately developed here, permits the releasor to retain the amount paid by the settling defendants together with the amount of the judgment against the nonsettling defendant.[1]

In May 1980, Gary Lyon, a student at a middle school in St. Mary's County, was injured during a physical education

---

1. The Act, Md. Code (1957, 1979 Repl. Vol.), Art. 50, § 16 *et seq.* provides in relevant part:

§ 16. Definitions.

. . . .

(a) *"Joint tort-feasors"* means two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them.

. . . .

§ 17. Right of contribution.

(a) *Right exists.*—The right of contribution exists among joint tort-feasors.

(b) *Discharge of liability or payment of share.*—A joint tort-feasor is not entitled to a money judgment for contribution until he has by payment discharged the common liability or has paid more than his pro rata share thereof.

(c) *When joint tort-feasor enters into settlement.*—A joint tort-feasor who enters into a settlement with the injured person is not entitled to recover contribution from another joint tort-feasor whose liability to the injured person is not extinguished by the settlement.

§ 18. Judgment against one tort-feasor.

The recovery of a judgment by the injured person against one joint tort-feasor does not discharge the other joint tort-feasor.

§ 19. Effect of release on injured person's claim.

A release by the injured person of one joint tort-feasor, whether before or after judgment, does not discharge the other tortfeasors unless the release so provides; but reduces the claim against the other tort-feasors in the amount of the consideration paid for the release, or in any amount or proportion by which the release provides that the total claim shall be reduced, if greater than the consideration paid.

§ 20. Effect of release on right of contribution.

A release by the injured person of one joint tort-feasor does not relieve him from liability to make contribution to another joint tort-feasor unless the release is given before the right of the other tort-feasor to secure a money judgment for contribution has accrued, and provides for a reduction, to the extent of the pro rata share of the released tort-feasor, of the injured person's damages recoverable against all other tort-feasors.

class while moving a piece of volleyball equipment. The instant suit for money damages based on that occurrence was brought by Barbara Allgood, individually, and as mother and next friend of Gary Lyon (collectively, Plaintiffs). Joined as defendants were Kenneth Mueller (Mueller), the physical education class teacher, George A. Kirby (Kirby), the principal of the middle school, the Board of Education of St. Mary's County (the Board), and Jayfro Corporation (Jayfro), the manufacturer of the equipment. During the trial the Plaintiffs settled with Mueller, Kirby, and the Board for $75,000 and gave a joint tortfeasors release. The trial continued without the jury being told about the settlement. The court submitted the case on special issues under which the jury awarded the Plaintiffs $20,000 damages only against Jayfro. Judgment in that amount was entered against Jayfro on February 25, 1985. On March 7, 1985, Jayfro moved for an order crediting against the judgment the amount paid by the settling defendants for their release by the Plaintiffs. The court, on July 25, 1985, ordered the clerk to enter as satisfied the Plaintiffs' $20,000 judgment against Jayfro. Plaintiffs appealed from that order and we issued the writ of certiorari on our own motion prior to consideration of the case by the Court of Special Appeals.

The release, captioned, "JOINT TORT–FEASOR'S RELEASE AND INDEMNIFICATION AGREEMENT," provides in pertinent part:

(2) This joint tort-feasor's release, since it involves a minor, will only be effective when approved by a Maryland Circuit Court Judge.

. . . .

(6) Payment of the consideration for this release shall not be construed as an admission of liability of the settling defendants. The settling defendants expressly deny liability for the accident. . . . This release is intended and executed for the purpose of [compromising], discharging and releasing all existing claims by Plaintiff against the settling defendants.

(7) It is expressly understood that Plaintiff is not releasing the claim which Plaintiff has asserted against Jayfro Corporation, except as spelled out herein.

(8) It is expressly agreed that this release is being given pursuant to the terms and definitions set forth in the [Act] (Md. Code (1957, 1979 Repl.Vol.) Art. 50, Sections 16–24).

(9) It is the intention of the Plaintiff to relieve the settling tort-feasors from any liability to make contribution to Jayfro Corporation or its successors or assigns in the event that Jayfro Corporation is held liable to Plaintiff or Plaintiff's successors or assigns.

(10) Plaintiff agrees that her right (individually and as mother and next friend of Gary Lyon) to recover damages from Jayfro Corporation is hereby reduced to the extent of the *pro-rata* share of the settling defendants of the damages of the Plaintiff recoverable against Jayfro Corporation *should any of the settling defendants be found jointly liable to Plaintiff with Jayfro Corporation.*

(11) It is further agreed that Plaintiff will hold harmless and indemnify the settling defendants from any further liability or damages or financial responsibility to Jayfro Corporation which arises out of the claim by Jayfro Corporation against the settling defendants in Law No. 8382. [Emphasis added.]

The circuit court's order recited that the "Seventy-Five Thousand ($75,000.00) Dollar settlement is more than the $20,000.00 award which is the jury's assessment of the full value of plaintiffs' claim[.]" We infer that the circuit court applied, either directly or indirectly, § 19 of the Act under which "[a] release by the injured person of one joint tort-feasor ... reduces the claim against the other tort-feasors in the amount of the consideration paid for the release," where that amount exceeds any amount or proportion provided in the release.

Plaintiffs' position is that the Act does not apply to the facts here and that, under the terms of the release, the Plaintiffs have neither waived their rights against Jayfro nor agreed to reduce any judgment if none of the settling defendants is found jointly liable with Jayfro to the Plaintiffs. Jayfro's position is that the release treats it as a joint tortfeasor with the settling defendants so that it gets a reduction of the judgment under, or to the extent provided by, § 19 of the Act. Jayfro says that the principle recognized in *Jones v. Hurst,* 54 Md.App. 607, 459 A.2d 219 (1983) applies here.

Section 19 provides how a "release by the injured person of one joint tort-feasor ... reduces the claim against the other tort-feasors[.]" For the nonsettling defendant to get the benefit of the reduction solely by operation of statutory law, the settling defendant and the nonsettling defendant must be "persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them." Act, § 16(a). *See also Brooks v. Daley,* 242 Md. 185, 193, 218 A.2d 184, 188–89 (1966); *Swigert v. Welk,* 213 Md. 613, 619, 133 A.2d 428, 431 (1957); *Jones v. Hurst, supra,* 54 Md. App. at 608, 459 A.2d at 220. *Swigert v. Welk, supra,* pointed out that "[t]he [Act] does not specify the test of liability[,]" and observed that "[c]learly, something short of an actual judgment will suffice; we think it equally clear that a denial of liability will not." 213 Md. at 619, 133 A.2d at 431. Over the years the considerable expanse between the two guideposts staked out in *Swigert* has been an object of attention in the drafting of joint tortfeasors releases.

*Jones v. Hurst, supra,* recognized that the reduction described in § 19 could be obtained by a release drafted to achieve that effect. There a motor vehicle operated by the plaintiff had been struck in the rear by a vehicle manufactured by General Motors Corporation and operated by the nonsettling defendant. The plaintiff sued the nonsettling defendant who raised sudden brake failure as a defense.

Plaintiff then sued General Motors in a separate action which was later dismissed after the plaintiff and General Motors settled pursuant to a joint tortfeasors release. Thereafter the plaintiff obtained a judgment against the nonsettling defendant in the original action in which General Motors was not a party. The nonsettling defendant claimed, and *Jones* held, that the plaintiff's judgment was to be reduced by a pro rata share based on the provisions of the release to General Motors. Although General Motors expressly denied liability to the plaintiff in that release, the instrument continued:

> I [plaintiff] further understand and agree that in any action or suit in which General Motors Corporation may be of [*sic*] has been joined as a defendant, any and all judgments recovered [*sic*] by me against any person, firm or corporation for any and all claims as aforesaid shall be reduced in the amount of the consideration paid for this release or to the extent of the pro rata share of the said General Motors Corporation if said pro rata share is greater than the consideration paid for this release [recited to be $10]; or in accordance with the Uniform Contribution Among Tort-Feasors Act, Article 50, Sections 16–24 of the Maryland Code. I further agree that for the purpose of determining the amount of any judgments that may be recovered by me against any person, firm or corporation, except General Motors Corporation in the aforesaid action ... *that the said General Motors Corporation shall be considered as joint tortfeasors* [sic] *to the same extent and effect as if judgments had been rendered against them* [sic] *as joint tort-feasors* [emphasis supplied]. [54 Md.App. at 609–10, 459 A.2d at 221 (emphasis in original).]

*Jones* reached the correct result as a matter of contract law. The release in *Jones* contained an *unconditional* promise by the releasor to determine the amount of any judgment recovered by the releasor against any one other

than General Motors by considering General Motors to be a joint tortfeasor to the same extent as if judgment had been rendered against it as a joint tortfeasor. The nonsettling defendant was a third-party beneficiary of that unconditional promise. We need not express any opinion whether a release in the form utilized in *Jones,* in which there was no contractual assumption by the settling defendant of liability to the releasor jointly with the nonsettling defendant, triggers the Act and produces a reduction by direct operation of statutory law.

In the case before us the nonsettling defendants continued to participate in the trial after the release had been given. The trial court submitted the liability issues to the jury which found only Jayfro to be liable to the Plaintiffs. In this case we have both a judicial determination that there is no liability of the settling defendants jointly with Jayfro to the Plaintiffs and an express denial of an assumption contractually of any such liability by the settling defendants.[2] Consequently §§ 16(a) and 19 of the statute do not directly operate here.

Jayfro nevertheless submits that the verdict and judgment are immaterial for purposes of applying the release under which the settling defendants are to be treated as joint tortfeasors. Jayfro argues that the settling defendants remained in the case only for the purpose of having the jury value the Plaintiffs' damages and not for the purpose of determining whether the settling defendants were joint tortfeasors with Jayfro. Jayfro has presented no facts to support this argument other than the procedural history of the litigation and the terms of the written release. Consequently, we look to the terms of the release.

---

**2.** This analysis presupposes, *arguendo,* that a contractual assumption of the status of tortfeasor by A, followed by a judicial determination that B is liable in tort to the plaintiff, produces "two or more persons jointly or severally liable in tort for the same injury" within the meaning of § 16(a) of the Act.

The release given by the Plaintiffs is unambiguous. Unlike the release in *Jones,* the Plaintiffs have only conditionally promised in the subject release to reduce a judgment against Jayfro. The Plaintiffs have agreed to make a reduction only "should any of the settling defendants be found jointly liable to Plaintiff[s] with Jayfro Corporation." We cannot by a process of construction completely eliminate the condition from the release. That condition has not been satisfied under the facts of this case.

The mere fact that the release in the instant case was obviously drawn in contemplation of the Act does not make the settling defendants joint tortfeasors with Jayfro. We agree with the analysis made relatively shortly after the Act was adopted in W. Allen, *Joint Tortfeasors: Contribution, Indemnity and Procedure,* paper read before the Barristers Club of Baltimore (March 30, 1948) and *reprinted by* the *Daily Record* from its edition of June 7, 1948:

> But it seems to me that the fact alone of the release is not an absolute admission by any party in interest that A the payor was in fact negligent. I think that any party to the suit as a matter of right is entitled to have the question of A's negligence submitted to the jury, and if the answer be no, then A in fact was a volunteer and B gets no reduction from the total damages recoverable by P against B. [*Id.* at 19.[3]]

ORDER OF THE CIRCUIT COURT FOR ST. MARY'S COUNTY OF JULY 25, 1985, VACATED. COSTS TO BE PAID BY JAYFRO CORPORATION.

---

**3.** A brief by an amicus curiae was also filed in this case. To the extent that the amicus brief raises issues which have not been raised by Jayfro and answered above, we do not consider them. *See Maryland-National Capital Park and Planning Commission v. Crawford,* 307 Md. 1, 15 n. 6, 511 A.2d 1079, 1086 n. 6 (1986). *See also United Parcel Service, Inc. v. Mitchell,* 451 U.S. 56, 60 n. 2, 101 S.Ct. 1559, 1562 n. 2, 67 L.Ed.2d 732, 738 n. 2 (1981); *Bell v. Wolfish,* 441 U.S. 520, 531 n. 13, 99 S.Ct. 1861, 1870 n. 13, 60 L.Ed.2d 447, 463 n. 13 (1979); *Knetsch v. United States,* 364 U.S. 361, 370, 81 S.Ct. 132, 137, 5 L.Ed.2d 128, 134 (1960).