566 A.2d 787

Noreen ST. LOUIS

v.

Curtis C. BECKLES, a Minor, etc. et al.

No. 459, Sept. Term, 1989.

Court of Special Appeals of Maryland.

Dec. 5, 1989.

Richard E. Schimel (Jean L. Betz and Budow Noble, P.C., on the brief), Bethesda, for appellant.

Richard S. Schrager (Howard M. Rensin and Howard M. Rensin, P.A., on the brief), Hyattsville, for appellees.

Argued before WILNER, GARRITY, FISCHER, JJ.

GARRITY, Judge.

In this matter, we shall examine the language of a joint tort-feasor release to determine its effect upon the obligation of the remaining party when the settling defendant is found not liable.

## Factual Background

On April 23, 1984, Curtis C. Beckles, a minor, was crossing Riggs Road in Hyattsville, Maryland, when he was hit by a car driven by Janet T. Dierks. At the time of this accident and pursuant to a request from Curtis's parents, Clem and Marilyn Beckles, Curtis was in the care of a neighbor of the Beckles, Noreen St. Louis, and her son, Roger St. Louis. On January 31, 1986, both Curtis and his parents filed an amended complaint in the Circuit Court for Prince George's County against Janet T. Dierks and Max M. Dierks (husband of Janet Dierks and owner of the vehicle involved in the accident), Noreen St. Louis, and Roger St. Louis.[1]

On April 6, 1987 Curtis, Clem, and Marilyn Beckles (hereinafter referred to as appellees) settled their claim against

---

1. On October 1, 1986 the circuit court (Woods, J.) granted summary judgment in favor of defendant Max Dierks, and on December 15, 1987 the court (Levin, J.) granted summary judgment in favor of defendant Roger St. Louis.

defendant Janet T. Dierks, pursuant to the terms of a document labeled "Joint Tort–Feasor Release." In consideration of the sum of $100,000.00 ($40,000.00 paid to the parents and $60,000.00 to the minor) the appellees agreed to release the defendant Dierks and Allstate Insurance Company from all damages and liability. The Joint Tort–Feasor Release further provided as follows:

We further understand and agree that we are not releasing any actions, causes of action, claims, and/or demands which have accrued or which may hereafter accrue to us against Noreen St. Louis and Roger St. Louis, their heirs, personal representatives, executors, administrators, or assigns, on account of injuries, damages sustained at the time above mentioned, but for the consideration recited above, it is agreed that all claims recoverable by us against Noreen St. Louis and Roger St. Louis, their heirs, personal representatives, executors, administrators, or assigns, *are hereby reduced to the extent of the statutory pro rata share of said Janet T. Dierks under the provisions of the Uniform Contribution Among Joint Tort–Feasors Act,* Article 50, Sections 16–21 inclusive, of the Annotated Code of Maryland, and all such damages recoverable by us on account of said account, and we warrant that we have not heretofore released any persons, firms or incorporations from any claims or liability for any damages arising out of said accident . . .

. . . we further understand and agree that for the purposes of this release, *Janet T. Dierks, Noreen St. Louis, and Roger St. Louis, their heirs, personal representatives, executors, administrators, or assigns are considered as "JOINT TORT–FEASORS" within the meaning of the aforesaid Uniform Contribution Among Joint Tort–Feasors Act.* (emphasis added).

By order of May 6, 1987, the circuit court (Blackwell, J.) approved the parties' settlement. That order stated that,

"the Entry of Judgment in favor of the Plaintiffs and against the Defendant Janet T. Dierks, only, be withheld until the conclusion of this case ...," and further ordered that "no mention be made or evidence be introduced at trial by any party regarding the settlement referred to herein." [2]

On August 23, 1988, the matter proceeded to trial (Levin, J., presiding) against both defendant Janet Dierks and appellant Noreen St. Louis, and, pursuant to the May 6, 1987 order of the circuit court, the jury was not advised of the existence of a settlement agreement between the appellees and defendant Dierks.[3] On August 29, 1988, the jury returned a verdict in favor of the appellees against the appellant only for a total of $154,829.55: $79,829.55 on behalf of appellees Clem and Marilyn Beckles and $75,-000.00 on behalf of appellee Curtis C. Beckles. By special issue verdict sheet, the jury specifically found that defendant Dierks was not negligent in operating her husband's car on April 23, 1984.

The appellant filed a "Motion to Revise Judgment and/or to Reduce Amount of Judgment Against St. Louis to Reflect Prior Settlement Amount Paid by Co–Defendant Dierks." She argued in that motion, as she argues before us, that under the unambiguous terms of the release between the appellees and Dierks, both she and Dierks are joint tort-feasors. The appellant argues that she is therefore, as "a third party beneficiary of the unconditional promise made by the [appellees]," entitled to reduce any claim against her to the extent of the statutory *pro-rata*

---

**2.** This ruling was in conformity with the general principle that a jury should not be informed of a settlement, since it would only tend to mislead them, and could be construed incorrectly as an admission of liability. *Brooks v. Daley,* 242 Md. 185, 193, 218 A.2d 184 (1966); *Auto Village Inc. v. Sipe,* 63 Md.App. 280, 285–86, 492 A.2d 910 (1985).

**3.** On November 27, 1987, defendant Dierks filed a Motion for Appropriate Relief in which she requested that the court relieve her from any further participation in the litigation. That motion was denied by the circuit court.

share of defendant Dierks.[4] After a hearing on the appellant's motion, the trial judge disagreed, opining:

> When Mrs. Dierks paid $100,000.00 she bought her peace, and the fact that they paid her or her carrier paid the $100,000.00, they were mere volunteers. [Appellees] get a windfall. It's that simple. [Appellees] get a windfall that by right Dierks shouldn't have paid anything. Of course, the jury says she wasn't responsible ... you can't take advantage of that $100,000.00 until and when somebody says that the co-defendant was a joint tort-feasor ... Once that jury found [appellant] responsible and [Dierks] not responsible, you can't cut anything in half ... and if somebody says I am wrong, they have people down Route 50, you know.

Accordingly, on November 29, 1988 Judge Levin denied the appellant's Motion to Revise.

## Discussion

The Joint Tort–Feasor Release at issue was drawn in contemplation of, and refers to, Maryland's version of the Uniform Contribution Among Tort–Feasors Act ("the Act"), Maryland Code (1957, 1986 Repl.Vol.), Art. 50, §§ 16–24. Section 19 of the Act provides:

> § 19. *Effect of release on injured person's claim.*
>
> A release by the injured person of one joint tort-feasor, whether before or after judgment, does not discharge the other tort-feasors unless the release so provides; but reduces the claim against the other tort-feasors in the amount of the consideration paid for the release, or in any amount or proportion by which the release provides that the total claim shall be reduced, if greater than the consideration paid.

---

**4.** Specifically, the appellant requested that the judgment of $79,829.55 in favor of appellees Clem and Marilyn Beckles be reduced by $40,-000.00, and that the judgment of $75,000.00 in favor of appellee Curtis Beckles be reduced by $60,000.00.

This section is not applicable, however, unless the person released was a joint tort-feasor. Section 16(a) of the Act defines "Joint tort-feasors" as "two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them." Section 16 does not specifically define the term "liable." In determining whether Dierks is a joint tort-feasor together with the appellant, we turn to *Swigert v. Welk*, 213 Md. 613, 133 A.2d 428 (1957), in which the Court of Appeals stated: "The Act does not specify the test of liability. Clearly, something short of an actual judgment will suffice; we think it equally clear that a denial of liability will not." *Id.* at 619, 133 A.2d 428.

In *Jones v. Hurst*, 54 Md.App. 607, 459 A.2d 219 (1983), we held a release similar in language to that before us today sufficient to confer joint tort-feasor status on the released party. In *Jones*, the plaintiff sued defendants Hurst and General Motors. Shortly before trial, she settled her case against General Motors and executed a release absolving General Motors of liability in exchange for its promise to provide an expert at trial. The release included a provision whereby General Motors expressly denied liability to Jones for the subject accident. The release then continued:

I [Jones] further understand and agree that in any action or suit in which General Motors Corporation may be of [sic] has been joined as a defendant, any and all judgments recovered [sic] by me against any person, firm or corporation for any and all claims as aforesaid shall be reduced in the amount of the consideration paid for this release or to the extent of the pro rata share of said General Motors Corporation if said pro rata share is greater than the consideration paid for this release [recited to be $10.00]; or in accordance with the Uniform Contribution Among Joint Tort Feasors Act, Article 50, Sections 16–20 of the Maryland Code. I further agree that for the purpose of determining the amount of any judgments that may be recovered by me against any

person, firm or corporation, except General Motors Corpo-ration in the aforesaid action ... *that the said General Motors Corporation shall be considered as joint tort-feasors [sic] to the same extent and effect as if judg-ments had been rendered against them [sic] as joint tort-feasors.*

Thereafter, the plaintiff dismissed General Motors Corpora-tion and obtained a judgment against defendant Hurst, prompting Hurst to seek a *pro-rata* reduction in the verdict based upon the provisions of the release to General Motors Corporation.

Although the release in the *Jones* case, set forth above, contained an express denial of liability by General Motors, we held their joint tort-feasor status to be established in light of the remaining language of the release that "the said General Motors Corporation shall be considered as joint tort-feasors to the same extent and effect as if judgment had been rendered against them as joint tort-feasors." We held this to be so even in the absence of a judicial determi-nation of General Motors' liability.

The release we interpreted in *Jones* is to be distinguished from that employed in the cases that the appellees urge upon us, specifically *Allgood v. Mueller,* 307 Md. 350, 354, 513 A.2d 915 (1986), and *C & K Lord, Inc. v. Carter,* 74 Md.App. 68, 78, 536 A.2d 699 (1988). In *Carter, supra,* the pertinent provision of the release involved stated:

Plaintiff agrees that his right to recover damages from C & K Lord, Inc. is hereby reduced to the extent of the *pro-rata* share of the settling defendants of the damages of the Plaintiff recoverable against C & K Lord, Inc. *should any of the settling defendants be found jointly liable to Plaintiff with C & K Lord, Inc.* (emphasis added).

Similarly, in *Allgood* the release read in part:

Plaintiff agrees that her right (individually and as mother and next friend of Gary Lyon) to recover damages from Jayfro Corporation is hereby reduced to the extent

of the *pro-rata* share of the settling defendants of the damages of the Plaintiff recoverable against Jayfro Corporation *should any of the settling defendants be found jointly liable to Plaintiff with Jayfro Corporation.* (emphasis added).

Not surprisingly, the courts in both cases held that, as both releases conditioned the contracted-for reduction on a judicial finding of joint liability, and as neither settling defendant was ever found liable, neither remaining defendant was entitled to a reduction in the verdict against it.

Like the release we applied in *Jones,* the release entered into by the appellees and Dierks is unambiguous. It clearly designates Dierks and the appellant as joint tort-feasors, without conditioning that status on a subsequent judicial determination, and without any reference at all to such a determination. Further, the release contains an unconditional promise to reduce a judgment against the appellant "to the extent of the statutory *pro-rata* share of said Janet E. Dierks." When the language of a contract is plain and unambiguous, the court must presume that the parties meant what they expressed. *General Motors Acceptance v. Daniels,* 303 Md. 254, 261, 492 A.2d 1306 (1985). We hold that the terms of the release entered into by Dierks and the appellees were sufficient to establish Dierks as a joint tort-feasor along with the appellant.

The issue that the *Jones* court was not confronted with, but that which we face, is the effect the subsequent judicial finding of non-liability of Dierks has on her contractually created status as a joint tort-feasor. In arguing that a reduction is improper, the appellees rely primarily on *dicta* with which the Court of Appeals chose to close the *Allgood* opinion:

The mere fact that the release in the instant case was obviously drawn in contemplation of the Act does not make the settling defendants joint tortfeasors with Jayfro. We agree with the analysis made relatively shortly after the Act was adopted in W. Allen, *Joint Tortfeasors:*

*Contribution, Indemnity and Procedure,* paper read before the Barristers Club of Baltimore (March 30, 1948) and *reprinted by* the *Daily Record* from its edition of June 7, 1948:

But it seems to me that the fact alone of the release is not an absolute admission by any party in interest that A the payor was in fact negligent. I think that any party to the suit as a matter of right is entitled to have the question of A's negligence submitted to the jury, and if the answer be no, then A in fact was a volunteer and B gets no reduction from the total damages recoverable by P against B.

Again, we note, as the Court of Appeals did, that the release at issue in *Allgood* was expressly conditioned on a judicial finding of joint liability of settling and non-settling defendants, and that the *Allgood* court specifically found that "that condition has not been satisfied under the facts of this case." Unlike settling defendant Dierks, then, the settling defendant in *Allgood* assumed neither a contractual nor judicial status of joint tort-feasor.

We believe that the jury's finding Dierks not liable does not relieve the appellees from the duties they assumed under the release they entered into with Dierks. That agreement could have provided for any effect on the appellees' claims which was not illegal. *Martinez v. Lopez,* 300 Md. 91, 101, 476 A.2d 197 (1984). In exchange for the certainty of a $100,000.00 total payment, the appellees' released Dierks and clearly agreed to reduce any recovery against the appellants, in this instance, by exactly that amount. We note that the written language embodying the terms of an agreement will govern the rights and liabilities of the parties, irrespective of the intent of the parties at the time they entered into the contract, unless the written language is not susceptible of a clear and definite understanding, or such an interpretation contravenes public policy or a positive rule of law. *Goldberg v. Goldberg,* 290 Md. 204, 212, 428 A.2d 469 (1981). It appears to us that the appellees seek to retain the benefit of their release with

Dierks, yet attempt to use the jury verdict as a pretext for relieving them from the portion of it requiring the reduction of appellant's liability.

In fact, once the appellees and Dierks entered into the joint tort-feasor release, the question of Dierks's actual liability in tort became immaterial. The release discharged her from any possible liability, and she essentially had no further interest in trying the issue of her liability.[5] Had Dierks been found solely liable for the $154,829.55 verdict eventually entered against the appellant, she would not be obligated to supplement the $100,000.00 payment she made to the appellees pursuant to the release; similarly, the jury's finding her not liable does not require the appellees to refund to her the money she paid to be released.

It is a fundamental principle that, in the absence of punitive damages, a plaintiff can recover no more from a tort-feasor than the loss actually suffered. A plaintiff is not entitled to be made "more than whole." *Kramer v. Emche,* 64 Md.App. 27, 38, 494 A.2d 225 (1985). In other words, as observed by Judge Thompson on our behalf in *Huff v. Harbaugh,* 49 Md.App. 661, 670, 435 A.2d 108 (1981), "there can be but one recovery for a single wrong."

In an application of the Uniform Act similar to that in the case *sub judice,* the Court in *Martinez v. Lopez,* 300 Md. at 104, 476 A.2d 197, noted that the Act adopts the jury verdict as the measuring rod of the plaintiffs' claim. Yet, the appellees are advocating an interpretation of the Act that would allow them a recovery of $254,829.55 for injuries valued at $154,829.55 by a jury. We will refrain from interpreting the release in a manner that contravenes an expressed public policy against excessive recovery. *Goldberg v. Goldberg,* 290 Md. at 212, 428 A.2d 469.

---

**5.** This fact is perhaps evidenced by her attempt to be relieved of any responsibility for participating in the trial of the case against the appellant via her Motion for Appropriate Relief.

■ We acknowledge that the "collateral source rule" provides an exception to the general maxim of "one recovery for one injury." Generally, a wrongdoer is not entitled to have damages for which he is liable reduced by establishing that the plaintiff has received or will receive compensation or indemnity for the loss from a collateral source, wholly independent of him. *Transit Co. v. Harroll*, 217 Md. 169, 175, 141 A.2d 912 (1958).[6] We hold that the rule does not apply to this case, however, because the agreement that created the benefit in favor of the appellees is the very same agreement that mandates the reduction in favor of the appellant. We do not view the appellees' recovery from Dierks, a contractually designated joint tort-feasor, as derived from a "collateral source." [7]

Accordingly, as Dierks and the appellant are joint tort-feasors, and as the later judicial determination to the contrary did not abrogate Dierks's status as such, we hold that the appellant is entitled to a reduction of the judgment entered against her.

The mechanics of applying this reduction are articulated in *Martinez, supra*. Under the Act, the amount of the appellant's reduction is the greater of the consideration paid or the amount or proportion agreed upon in the release to reduce the total claim. Md.Code Ann. Art. 50, § 19, *supra*. Hence, where the amount paid for a *pro-rata* release by the settling defendant exceeds that party's *pro-rata* share, but

---

6. The policy behind the rule is that a benefit which came to the injured party should not be shifted so as to become a windfall to the tortfeasor. If the plaintiff was himself responsible for the benefit as by maintaining his own insurance, or by making advantageous employment arrangements, the law allows him to keep it for himself. If the benefit was a gift to the plaintiff from a third party, or established for him by law, he should not be deprived of the advantage which it confers.
*Kassman v. American University*, 546 F.2d 1029, 1034 (C.A.D.C.1976).

7. Other courts have held that the rule does not apply to proceeds of settlements of litigation, even when made by one later found not liable to the recipient. *Kassman v. American University, supra*, 546 F.2d at 1035.

does not exceed the total of the shares of all joint tort-feasors, the consideration in excess of the *pro-rata* share also reduces the plaintiffs' claim and is in effect credited to the benefit of the non-settling defendant. *Martinez,* 300 Md. at 98, 476 A.2d 197.

Defendant Dierks's *pro-rata* share of the $79,829.55 judgment entered on behalf of appellees Clem and Marilyn Beckles is one-half that amount, or $39,914.77. Again, the consideration that Dierks paid these appellees for her release was $40,000. Under § 19 of the Act, then, the judgment against the appellant in favor of the parent appellees shall be reduced by $40,000, the greater of the two amounts. Similarly, defendant Dierks' *pro-rata* share of the $75,000 judgment entered on behalf of appellee Curtis Beckles is also one-half that amount, or $37,500. The consideration that Dierks paid appellee Curtis Beckles for her release was $60,000. The judgment against the appellant in favor of the minor appellee will therefore be reduced by $60,000. On remand, the circuit court shall enter an order reducing the judgment in favor of appellees Clem and Marilyn Beckles to the amount of $39,914.77, and reducing the judgment in favor of appellee Curtis L. Beckles to $15,000.

JUDGMENT REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY WITH INSTRUCTIONS THAT IT REDUCE THE AUGUST 29, 1988, JUDGMENT AGAINST NOREEN ST. LOUIS IN ACCORDANCE WITH THIS OPINION; COSTS TO BE PAID BY APPELLEES.