

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| LAWRENCE FOREMAN, ET AL., | ) | No. ED101525 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | |
| | ) | Honorable John F. Garvey |
| AO SMITH CORP., ET AL., | ) | |
| | ) | |
| Appellant. | ) | FILED: September 22, 2015 |

Sid Harvey Industries, Inc. ("Appellant") appeals from the trial court's judgment following a jury trial finding Appellant liable for negligent failure to warn Lawrence Foreman ("Respondent") of asbestos-related dangers contained in products Appellant delivered, which were a substantial factor in Respondent developing mesothelioma.  We affirm.

## I.  Background

Respondent worked as a steamfitter from 1958 until 1983, primarily at industrial and commercial construction sites.  He was routinely exposed to asbestos and eventually developed mesothelioma.  He initiated this action on February 20, 2013, and filed a First Amended Petition on April 29, 2013.

Respondent's original suit named 57 defendants.  By the time trial commenced on February 3, 2014, Appellant and Nibco, Inc. ("Nibco"), a manufacturer of valves, were the only

remaining defendants, with all others previously settling or being dismissed.[1]  Prior to trial

Appellants moved to apply Maryland law to the substantive issues of the case because

Respondent resided, worked, and received medical treatment in Maryland.  On January 15, 2014,

the trial court entered an order finding Maryland had the most significant relationship to the

parties and issues, and thus Maryland law would apply at trial, except to the issue of contributory

negligence versus comparative fault.[2]

Also prior to trial, Appellants moved to designate certain settlement releases as having

admitted joint tortfeasor status under Maryland's Uniform Contribution Among Joint Tortfeasors

Act ("UCATA").  On February 4, 2014, the trial court ordered that previously settled defendants

Trane US, Inc., Ingersoll-Rand Co., and Georgia-Pacific, LLC all had admitted joint-tortfeasor

status under Maryland law in their settlement releases.

Respondent testified at trial that he was exposed to asbestos during the installation and

removal of boilers, pipe valves, fittings, and "[p]robably just most about anything, really, that has

asbestos in it."  He identified Appellant as one of the companies that would supply products

containing asbestos, testifying that although he could not recall precisely how often Appellant

was the company delivering the products, he believed it to be "quite often."

Respondent said that oftentimes supplies for a job were already at a work site when he

arrived, and that sometimes it was hard to identify what company a product came from;

sometimes the products had identifying marks or labels, and sometimes they did not.  He said

whenever possible he did try to identify where a product came from, whether that be from

markings on the products themselves or from packing slips included with deliveries.  He could

---

[1] A third company, Superior Boiler Works, did continue on to a separate trial, which had been continued at the time of the trial in this case because the causation expert for Superior Boiler Works was then unavailable to testify.
[2] Missouri law would still apply to the issues in regards to Nibco because Nibco had not moved to apply Maryland law.

not recall any specific products he could identify as being delivered by Appellants, but he said he often recognized one of their delivery drivers, although could not remember his name.

Respondent's expert witness at trial was Steven Hays ("Hays"), an industrial hygienist. He formed his opinion based solely on Respondent's deposition testimony, finding Respondent had been exposed to "one of the highest lifetime doses" of asbestos Hays had ever seen. Hays testified he had never reviewed any specific product delivered by Appellant, relying only on Respondent's deposition prior to trial in forming his opinion.

Respondent also introduced deposition testimony of Appellant's vice-president of finance, Russell TumSuden ("TumSuden"). TumSuden testified that he would review prior asbestos cases brought against Appellant as he prepared for new asbestos litigation as it arose. He also reviewed old catalogs to see which asbestos-related products Appellant had sold. He testified that the only asbestos products he could confirm were sold by Appellant included dry cement, paste, pads, and rope. He testified that he never came across any instance of Appellant selling or distributing asbestos-containing insulation, gasket material, or rope.

On February 7, 2014, Appellant moved for a directed verdict after Respondent rested his case. The trial court denied the motion after argument and recess, and then denied Appellant's renewed motion for directed verdict at the close of all evidence.

The case was submitted to the jury on February 10, 2014, on the theory of Appellant's alleged negligent failure to warn. That same day, the jury entered its verdict in favor of Respondent against Appellants, awarding Respondent $4 million in damages.[3] Thirty one settled companies were found not negligent, but found Respondent's exposures to asbestos-related products of all defendants, including Appellant, were a substantial contributing factor in causing Respondent's mesothelioma. The trial court entered its judgment that day.

---

[3] The jury also entered a verdict in favor of Respondents against Nibco for $2 million in damages.

3

On March 4, 2014, Appellant filed its Combined Motion for Judgment Notwithstanding the Verdict, Or In the Alternative, Motion for New Trial and Memorandum of Law in Support ("Combined Motion"), and Request for Remittur; it also filed a Motion to Revise Judgment under the UCATA for reduction of the verdict of each party found liable at trial and each settled defendant who had previously admitted joint tortfeasor status.

On May 22, 2014, the trial court denied the Combined Motion and the Request for Remittur. The trial court granted, however, the Motion to Revise Judgment, holding that because there were three admitted joint-tortfeasors (Trane, Ingersoll-Rand, and Georgia Pacific) and two defendants found liable at trial (Appellant and Nibco), Appellant was entitled to a reduction in the verdict by five *pro rata* shares. This reduced the judgment against Appellant to $800,000.[4]

The Amended Final Judgment was then entered on May 22, 2014. This appeal followed.

## II. Discussion

Appellant raises four points on appeal. First, Appellant alleges the trial court erred in failing to grant its Motion for Directed Verdict and its Motion for Judgment Notwithstanding the Verdict because Respondent failed to present a submissible case. Appellant claims Respondent did not provide evidence that a product delivered by Appellant was a substantial contributing factor in causing Respondent's mesothelioma.

In its second point, Appellant argues the trial court erred in overruling objections to Respondent's causation expert's testimony because he assumed facts not in evidence. Appellant claims the expert improperly based his opinion on out-of-court testimony from Respondent that was never given to the jury.

---

[4] The jury's judgment against Nibco was reduced to zero dollars under Section 537.060, RSMo (2000).

4

Appellant's third point alleges the trial court erred in denying Appellant a setoff for the shares and amounts paid in excess of those for the 15 identified settled defendants under Maryland's UCATA, as this setoff was required by Maryland law.

Finally, Appellant alleges the trial court erred in failing to grant Appellant's Motion for New Trial in that the verdict contained a substantive defect under Missouri law. Appellant argues the two differing personal injury damage amounts rendered the judgments impossible to enforce as written.

## A. Denial of Motion for Directed Verdict

Appellant's first point on appeal alleges the trial court erred in denying Appellant's motions for a directed verdict and judgment notwithstanding the verdict because Respondent failed to present a submissible case to the jury. Before applying the proper standard of review, we must address the conflicts of law rules that govern our review.

"A fundamental principle of conflicts is that a forum state will always apply forum procedure, but it will choose the applicable substantive law according to its own conflict of law doctrines." Reis v. Peabody Coal Co., 997 S.W.2d 49, 58 (Mo. App. E.D. 1999) (quoting Ernst v. Ford Motor Co., 813 S.W.2d 910, 921 (Mo. App. W.D. 1991)). Thus, Missouri procedural law will apply, while Maryland law will apply to substantive issues.

## 1. Standard of Review

When reviewing the denial of a directed verdict, our review is limited to whether Respondents presented a submissible case. Delacroix v. Doncasters, Inc., 407 S.W.3d 13, 26 (Mo. App. E.D. 2013) (en banc). "A case may not be submitted unless each and every fact essential to liability is predicated upon legal and substantial evidence." Burns Nat'l Lock Installation Co., Inc. v. Am. Family Mut. Ins. Co., 61 S.W.3d 262, 271 (Mo. App. E.D. 2001).

5

We must consider the evidence and the reasonable inferences from it in the light most favorable to Respondent, disregarding all contrary evidence. Delacroix, 407 S.W.3d at 26. We will reverse the jury's verdict "only if there is a complete absence of probative facts to support the jury's conclusion." Keveney v. Missouri Military Acad., 304 S.W.3d 98, 104 (Mo. banc 2010).

2. Analysis

Appellant argues Respondent failed to present a submissible case because Respondent could not prove any specific product delivered by Appellant contributed to causing Respondent's disease.

"To establish proximate causation in Maryland, the plaintiff must introduce evidence which allows the jury to reasonably conclude that it is more likely than not that the conduct of the defendant was a substantial factor in bringing about the result." Lohrmann v. Pittsburgh Corning Corp., 782 F.2d 1156, 1162 (4th Cir. 1986).

Maryland courts have adopted what is known as the "frequency, proximity, and regularity" test for asbestos-exposure cases. John Crane, Inc. v. Linkus, 190 Md.App. 217, 233-34 (2010). "Relevant factors include the nature of the product, the plaintiff's proximity to the product, and the frequency and regularity of plaintiff's exposure to respirable asbestos fibers." Id. Evidence of exposure to a company's product can be either circumstantial or direct. Scapa Dryer Fabrics, Inc. v. Saville, 418 Md. 496, 511 (2011).

Appellant argues Respondent failed to identify any specific asbestos-containing product he worked with that was delivered by Appellant. "Exposure, however, may be established circumstantially." Eagle-Picher Indus., Inc. v. Balbos, 326 Md. 179, 210 (1992). "'The evidence, circumstantial as it may be, need only establish that [Appellant] was in the same vicinity as witnesses who can identify the products causing the asbestos dust that all people in

6

that area, not just product handlers, inhaled.'" Id., quoting Roehling v. Nat'l Gypsum Co. Gold Bond Bldg. Prod., 786 F.2d 1225, 1228 (4th Cir. 1986).

Respondent testified that he was exposed to asbestos several times a week during his career while working with cement, insulation, boilers, pumps, valves, gaskets, and fittings, and he identified Appellant as having delivered those products on a regular basis. Respondent's expert, Hays, testified that Respondent's exposure was "one of the highest lifetime doses" he had ever seen working as an industrial hygienist. Counsel for Appellant at trial also elicited testimony from Hays on cross-examination about his review of Respondent's deposition and the different types of products Respondent identified previously.

We reverse the jury's verdict "only if there is a complete absence of probative facts to support the jury's conclusion." Keveney, 304 S.W.3d at 104. Here, Respondent's testimony and the testimony of the experts provided more than enough evidence to meet this standard. Appellant's first point is denied.

B. Objection to Experts' Causation Opinions

Appellant's second point on appeal alleges the trial court erred and abused its discretion in overruling Appellant's objection at trial to Respondent's expert's testimony about causation. Appellant claims the opinions assumed facts not in evidence and was based on an improper hypothetical.

1. Standard of Review

Generally, trial courts enjoy considerable discretion in the admission or exclusion of evidence, and we will only reverse a decision of the trial court upon a finding of an abuse of discretion. Moore v. Ford Motor Co., 332 S.W.3d 749, 756 (Mo. banc 2011). "We will not find an abuse of discretion unless the ruling is clearly against the logic of the circumstances then

7

before the court and is so arbitrary and unreasonable that it shocks the sense of justice and indicates a lack of careful consideration." 8000 Maryland, LLC v. Huntleigh Fin. Servs. Inc., 292 S.W.3d 439, 446 (Mo. App. E.D. 2009).

2.  Analysis

In a videotaped deposition that was played for the jury, Respondent's counsel asked Dr. James Strauchen a hypothetical question:  whether working with Appellant's products could have been a substantial factor in developing mesothelioma, assuming Respondent worked as a steamfitter for 25 years and worked with asbestos-containing products delivered by Appellant. Appellant objected that this hypothetical assumed Appellant had delivered asbestos-containing products when that fact was not proven in evidence.

This argument is without merit.  As we previously stated, Respondent himself had testified about working with asbestos-containing products delivered by Appellant.  Dr. Strauchen also relied on the report of Hays, Respondent's industrial hygienist.  Appellant argues this report only referenced Respondent's deposition testimony, and not his trial testimony, and therefore the facts referenced were not in evidence.  We disagree.

Appellant introduced Hays's report in its entirety, without any objections or limitations. Appellant argues that because no record exists of the jury requesting Hays's report, we must assume the jury never saw it.  This is inaccurate.  "We presume the jury considered all of the evidence in arriving at its verdict." Turpin v. Anderson, 957 S.W.2d 421, 428 (Mo. App. W.D. 1997).  Thus, we are to presume the jury had Hays's report, which combined with Respondent's testimony at trial, contained substantial factual support for the hypothetical posed.  The trial court's decision to allow the hypothetical was not clearly against the logic of the circumstances,

nor does it shock our sense of justice or indicate a lack of careful consideration.  8000 Maryland, LLC, 292 S.W.3d at 446.  We find no abuse of discretion.  Appellant's second point is denied.

## C.  Denial of Setoff Under UCATA

Appellant's third point alleges the trial court erred in denying Appellant a setoff for amounts paid in excess of the shares of the fifteen identified settled defendants.  Appellant claims it was entitled to a pro-rata reduction of judgment for each party adjudicated to be liable at trial, and for each settled defendant who admitted joint tortfeasor status.

## 1.  Standard of Review

We will affirm the trial court's decision unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law.  Id., citing Murphy v. Carron, 536 S.W.3d 30, 32 (Mo. banc 1976).  We defer to the trial court on factual issues, and accept all evidence and inferences therefrom in the light most favorable to the verdict.  Id.  "However, we independently evaluate whether the trial court properly declared or applied the law to the facts presented."  Wagner v. Bondex Intern., Inc., 368 S.W.3d 340, 359 (Mo. App. W.D. 2012) (internal quotations omitted).

## 2.  Analysis

"When an injured person settles with a joint tortfeasor, UCATA prescribes the effect of a settlement release on the injured person's claims against other joint tortfeasors.  UCATA Section 3-1404 provides that a joint tortfeasor release reduces the injured person's claim against all non-settling joint tortfeasors."  Hashmi v. Bennett, 188 Md.App. 434, 441-42 (2009) (citing Jones v. Hurst, 54 Md.App. 607, 608 (1983).  Specifically:

> A release by the injured person of one joint tort-feasor, whether before or after judgment, does not discharge the other joint tortfeasors unless the release so provides, but it reduces the claim against the other joint tort-feasors in the amount of the consideration paid for the release or in any amount or proportion by which

9

the release provides that the total claim shall be reduced, if greater than the consideration paid.

Id., quoting UCATA, Section 3-1404. Appellant bears the burden of proving the joint tortfeasor status of the settling parties. Id.

"Tortfeasor status, in the absence of adjudication, generally rests on admission by the purported tortfeasor of such status. Thus, a party will be considered a joint tortfeasor when it admits joint tortfeasor status in a settlement agreement." Jacobs v. Flynn, 131 Md.App. 342, 374 (2000). However, entering into a settlement agreement and paying money does not automatically make a party a joint tortfeasor. Id. We must look to the plain language of the releases; "'Maryland follows the objective law of contract interpretation and construction.'" Hashmi, 188 Md.App. at 446, quoting Owens-Illinois, Inc. v. Cook, 386 Md. 468, 496 (2005).

Here, Appellant made pretrial motions to designate the settlement releases for Trane, Ingersoll-Rand, and Georgia-Pacific as Jones releases, and the trial court granted its motion. Those three, along with Appellant and Nibco who were both found liable at trial, were the five joint tortfeasors which led to Appellant's judgment being reduced to five pro-rata shares, or down to $800,000 from the original $4 million judgment. Appellant now contends that settlement agreements with fifteen other defendants should also qualify as Jones releases under the UCATA.

We disagree. As in Allgood v. Mueller, the settlement releases here do not contain the same language the Jones court found necessary to establish the settling defendant(s) were joint tortfeasors. 307 Md. 350 (1986). Unlike the releases for Trane, Ingersoll-Rand, and Georgia-Pacific, none of the remaining fifteen releases identify the defendant settling therein as a joint tortfeasor. None of the fifteen releases contains a commitment from Respondent to treat the

10

defendant as a joint tortfeasor, as the plaintiff did in <u>Jones</u>. 54 Md.App. at 610. Instead, nearly all the settlement releases reference the UCATA, and say they will cooperate *in the event that they are found to be joint tortfeasors in a judicial proceeding*. As in <u>Allgood</u>, "[t]he mere fact that the release . . . was obviously drawn in contemplation of the Act does not make the settling defendants joint tortfeasors with [Appellant]." 307 Md. at 358.

We find the trial court's decision had substantial evidence to support it and did not erroneously declare or apply the law. Appellant's third point is denied.

## D. Judgment Impossible To Enforce As Written

Fourth and finally, Appellant claims the trial court abused its discretion in failing to grant Appellant's Motion for New Trial because the jury's verdict contained a substantive defect. Appellant argues the differing monetary amounts for judgments against Appellant and Nibco rendered the judgments a nullity and impossible to enforce as written.

### 1. Standard of Review

Our standard of review for a trial court's denial of a motion for new trial is the same the standard for the admission or rejection of evidence discussed <u>supra</u>: for abuse of discretion. <u>Gallagher v. DaimlerChrysler Corp.</u>, 238 S.W.3d 157, 162 (Mo. App. E.D. 2007).

### 2. Analysis

Prior to trial, Appellant requested Maryland law to apply to the substantive issues of the case, which the trial court granted. Nibco, however, made no such request, and therefore Missouri law applied to all aspects of the case as it pertained to Nibco. This led to two different verdict forms beings submitted to the jury, and ultimately the jury returned judgments of $4 million against Appellant and $2 million against Nibco.

11

Appellant argues this is an illegal verdict, which is "the product of a jury lacking in authority to render it . . ." and "flatly contrary to a trial court's instruction mandating a specific result." Bank of Kirksville v. Small, 742 S.W.2d 127, 129 (Mo. banc 1987). Respondent alleges this was merely an inconsistent verdict, which is a verdict that is "'so contradictory that [it] cannot be construed with certainty or when [it] cannot fairly be resolved as a definite finding in favor of either party.'" Braboy v. Fed. Express Corp., 238 S.W.3d 690, 693 (Mo. App. E.D. 2007) (quoting Downey v. Univ. Internists of St. Louis, 154 S.W.3d 339, 342 (Mo. App. E.D. 2004)). Verdicts that are inconsistent are correctable, but must be resubmitted to the jury or the defect is waived. Small, 742 S.W. at 129.

We find this verdict was inconsistent, but not illegal. The jury answered the two different verdict forms submitted to it, and did not lack authority to render those verdicts. The differing amounts in each verdict were problematic in that it was not easy to determine what the factual basis was for the difference in verdict amounts. However, "a claim that a verdict is inconsistent to the point of being self-destructive must be presented to the trial court before the jury is discharged. Otherwise the claim of inconsistency will be held to have been waived." Douglass v. Safire, 712 S.W.2d 373, 374 (Mo. banc 1986). Appellant had every opportunity to object to the verdicts before the jury was discharged and failed to do so. Thus, we consider this claim waived. Appellant's fourth and final point is denied.

### III. Conclusion

The judgment of the trial court is affirmed.

_____
ROY L. RICHTER, Judge

Patricia L. Cohen, J., concurs
Robert M. Clayton, III, J., concurs

12